**ZIONS FIRST NATIONAL BANK, a National Association, Plaintiff and Respondent,**

v.

**Paul K. HURST et al., Defendants and Appellants.**

No. 14917.

Supreme Court of Utah.

Oct. 14, 1977.

LaVar E. Stark, Ogden, for defendants and appellants.

John H. Allen, Salt Lake City, for plaintiff and respondent.

CROCKETT, Justice:

Plaintiff, Zions First National Bank, sued defendant, Paul K. Hurst, to recover $50,-

000, the amount of a guaranty agreement which the defendant had executed. Defendant admitted executing it but asserted as defense that he had not been given notice of plaintiff's bank's acceptance of the guaranty and of its extending credit in reliance thereon. Upon a trial to the court, it made findings and entered judgment in favor of the plaintiff for the $50,000, with interest and attorney's fees as provided for therein.

The defendant Hurst was an "officer and director" of Intermountain Flight Center, in which he owned about one third the stock, as did two other principal officers and shareholders, Sterling Meyer and Dean McKee. In September of 1972, that company sought to obtain a loan of $150,000 from plaintiff Zions Bank. The bank required guarantors. Each of the three shareholders just named executed a similar guaranty agreement. Our concern here is only with the one executed by defendant Hurst.

On October 4, 1972, J. L. Kiholm, manager of Zions' Sugarhouse branch took the guaranty to the office of Intermountain where defendant executed it. In August of 1973, as a result of some internal rearrangements in Intermountain, defendant's stock holdings were reduced to about 3 percent and his status as an officer and director was terminated. However, he did not give the bank notice of that fact, nor that he wanted to be relieved of his obligation under the guaranty as its terms permitted.

The guaranty provides in pertinent part:
. . . the undersigned hereby guarantees prompt payment . . . of any and all indebtedness . . . which Debtor may now be indebted or may hereafter become indebted to Bank . . in whatever form it may be and at whatever time it may be created . . . the liability of the undersigned by virtue hereof shall not exceed the sum of $50,-000.00, together with interest and any costs including attorney's fees that may be incurred in enforcing the payment hereof. . . .

\* \* \* \* \* \*

This guarantee shall continue in full force and effect until terminated by written notice of such termination delivered by the undersigned to Bank . . . .

Subsequent to the execution of the guaranty plaintiff Zions began making advances to Intermountain by crediting its account, so that the latter could withdraw the funds. On October 11, 1972, $37,921 was advanced. Intermountain's balance fluctuated as different amounts were borrowed and paid back at various times. It dipped as low as $49,000 and went as high as $162,000 during the time defendant Hurst was an officer and stood at $91,000 in August of 1973, when he was terminated. On October 2, 1973, the account showed a balance of zero, although $121,000 was later advanced that same day; and the account continued to show substantial advances and credits. The indebtedness peaked at $368,000 in July, 1974.

The difficulties in this case resulted from the fact that Intermountain was unable to meet its obligations and filed a petition in bankruptcy. Plaintiff Zions' loans were secured by certain collateral, among which were five airplanes. These were sold, but brought only the sum of $72,500 to apply on a total debt to Zions of $250,893.20. Hence this suit against defendant on his guaranty.

Defendant's argument that he should not be bound by the guaranty is that when he signed it he was not agreeing to guarantee a presently existing or a definitely determined obligation, but one which was indefinite in amount and contingent upon the bank advancing money in the future, wherefore he says he was entitled to notice that the conditions had been fulfilled and that the guaranty had been accepted by plaintiff bank.[1]

---

1. Defendant cites and relies on the case of *Lester Piano Co. v. Romney*, 41 Utah 436, 126 P. 325 (1912).

■ We have no disagreement with the general proposition defendant advocates: that if a guarantee relates to a debt or obligation to be incurred in the future upon some contingency, or upon conditions which must be fulfilled, that may amount only to an *offer* to become a guarantor, in which instance the guarantor is entitled to be notified when those conditions have been fulfilled so that he may know the time of the beginning of, and the amount of, his liability.[2] However, in regard to the problem presented here, it is essential to distinguish between such an agreement, which amounts only to an offer to become a guarantor, and one which becomes presently binding and absolute in nature.[3]

What has just been said about those two contrasting propositions is in conformity with the fundamentals of contract of law: i. e., the ascertainment of the intent upon which there was a meeting of the minds of the parties; and that this is to be done, first from the contract itself; and if there be doubt or uncertainty, from what was otherwise said and done.[4]

■ Those principles apply to the facts herein thus: defendant, as an officer and principal owner of Intermountain, knew of the application to plaintiff Zions to borrow up to $150,000 and that the bank had requested guarantors. He acknowledges that when he signed the guaranty he expected that advancements on the loan were to begin right away. He continued to be an officer and principal owner of the business for 11 months, during which time he was aware that the bank was advancing the substantial sums set forth above; and this can only be fairly assumed to be in reliance upon his guarantee and that of others. Notwithstanding his urgence of the importance of the fact that the balance Inter-

mountain owed the bank was reduced to zero on October 2, 1973, the account also shows that $120,000 was advanced later that same day.

The most significant and controlling fact in this case is that in spite of the fact that the guarantee agreement provided that it would continue in effect "until terminated by written notice" by the guarantor (defendant) delivered to the bank, defendant gave the bank no such notice. Nor did he notify them of his change of status with Intermountain. In consequence thereof it is our opinion that upon the basis of the language of the agreement and the circumstances under which it was given the trial judge was justified in his view that it was the intent of parties that it was to be a present and binding guaranty of advancements of credit by plaintiff Zions to Intermountain.

■ Defendant attacks the judgment upon the additional ground that plaintiff Zions did not notify him of the time and place of the sale of the five airplanes and urges that this should preclude any deficiency judgment against him. It is true that Section 70A–9–504, U.C.A.1953 (Uniform Commercial Code) requires that the secured party (plaintiff Zions) shall give notice to the debtor; and we agree, of course that such notice should be given to any obligor, including a guarantor.[5]

■ The rejoinder of plaintiff Zions is: that this matter was not raised in the pleadings; that the primary obligor, Intermountain, knew that the planes were being taken and sold; and that there was no trial of the issue, or showing of any damage or disadvantage to the defendant. More importantly, the usual rule is that failure to so notify does not release the debtor from any

---

**2.** Ibid.

**3.** See *Royal Tailors v. Newton*, 66 Utah 154, 239 P. 949 (1925) wherein the court says: ". . . the rule seems to be well settled that, if the guaranty is direct, and the thing guaranteed definite in its amount, and known to the guarantor at the time he gives his guaranty, notice of acceptance need not be given." That the obligation to give notice depends on the

nature of the guarantee, see 38 Am.Jur.2d, Guaranty, Sec. 103 and Sec. 104.

**4.** *Pugh v. Stockdale and Company*, 570 P.2d 1027, Utah, 1977; Restatement of Contracts, Sec. 235(d); 3 Williston on Contracts, Sec. 618.

**5.** See definition of debtor in Sec. 70A–9–105, U.C.A.1953.

deficiency that may arise; but upon such failure he may get credit for (or recover) only for any loss caused by the failure to so notify.[6] In that connection, inasmuch as the airplanes sold for $72,500, they would have to have brought nearly three times that amount, that is $200,000 or more, before the proceeds therefrom would have relieved the defendant of any liability under his guaranty. We are not persuaded that there has been any substantial and prejudicial error or that any injustice has resulted in holding him to his agreement.

Judgment affirmed. Costs to plaintiff (respondent).

ELLETT, C. J., and MAUGHAN, WILKINS, and HALL, JJ., concur.

[6]. Sec. 70A–9–507, U.C.A.1953: ". . . If the disposition has occurred the debtor or any person entitled to notification . . . has a right to recover from the secured party any loss caused by a failure to comply with the provisions of this part."