UTAH BANK & TRUST, a Utah Corporation, Plaintiff and Respondent,

v.

James H. QUINN and James H. Quinn, Jr., Defendants and Appellants.

No. 16788.

Supreme Court of Utah.

Dec. 29, 1980.

David K. Robinson and Edward T. Wells, Salt Lake City, for defendants and appellants.

Layne B. Forbes, Bountiful, for plaintiff and respondent.

WAHLQUIST, District Judge:

This is an action on a promissory note. The note was secured by certain automobiles and a boat, which were sold. The deficiency was calculated, and judgment was entered. The debtors appeal, contending that no deficiency could be granted.

The circumstances that gave rise to the signing of the note are not contested. The debtors are father and son. The son conducted a used-car sales business, which specialized in foreign cars. Frequently, the cars were what was referred to in the evidence as "exotic" cars, others were referred to as "high performance" cars. The boat was a high performance model. The car inventory was floored, that is, financed by the bank. The father was in an unrelated occupation, but had signed a guarantee of the flooring account. The guarantee was limited to $180,000.00. The contract required that the son's business pay for each car as it was sold, within a definite number of hours, so the flooring account would be substantially equal to the inventory. The bank eventually took inventory of all floored vehicles. It was discovered that the business had sold out-of-trust, that is, sold without paying the bank, vehicles having a total value of about $57,000.00. The bank immediately repossessed all of the remaining cars and boat. A bank official, the son, and the father held a meeting where they agreed as to the amount of the son's liability to the bank. It was agreed that the son was about $57,000.00 short because of out-of-trust sales. The son had given a check drawn on a different bank to the creditor bank for the purchase of a certified draft for $41,000.00. The draft was sent to New Jersey to purchase additional cars. The son's check was dishonored on presentation. It has never been good. There was an $8,500.00 personal loan due. It was agreed that the book value (that is, flooring figure) of the remaining inventory was about $102,000.00. It was obvious there would be a great deficiency. This was calculated by adding together the out-of-trust sales, the bad check, the personal loan, and the then-existing balance on the floored automobiles. The parties agreed that the son would sell

his own home and apply the equity to this debt. The father and son signed a new guarantee promissory note, this time for about $198,000.00, the debt then due.

It was agreed the cars would be placed on used-car lots and then sold individually. The note was not to be due for three months.

There is conflict in the evidence as to the details of how the sales would be controlled. The son contends that he was the acknowledged expert in the exotic car field and that he was to oversee and promote the sales. The bank contends that it had lost confidence in the son, and anticipated the sales would be controlled by one of their own vice presidents. The son immediately returned to Arizona. He was employed by a different agency. No notice was given to the debtor of separate sales. In a few instances, the bank did not have proper titles, and therefore contacted the father who remained in the Salt Lake area. The father signed so the title transfers could be made. The son attempted to take a Ferrari to Arizona. The bank refused to permit the inventory to leave the state. Eleven of the fourteen units in the inventory were sold.[1] The son kept three. The sales were principally on used-car lots, after advertising in local newspapers. The evidence is in gross conflict as to whether or not the advertising and other promotional efforts were carried on in a commercially reasonable fashion. The sale of the inventories brought approximately $66,000.00 (with the boat sale).

The son sold his home and applied approximately $22,000.00 to the account. The bank demanded payment for the total dif-ference, with interest and costs of sales. The son has taken out bankruptcy. The father denies liability, and is the real party on appeal.

The trial court instructed the jury that the Uniform Commercial Code required that the debtor be given written notice of the time and place of the sale of collateral. The court further instructed the jury that no written notice was given when the units were sold. The jury was instructed to answer interrogatories. The three interrogatories in question, and their answers, were as follows:

*PROPOSITION NO. 1*

Was the disposition of the collateral by Utah Bank & Trust made in a commercially reasonable manner?

__7__ Yes

__1__ No

_____ No preponderance of the evidence either way. . . .

*PROPOSITION NO. 3*

The Court has instructed you that the plaintiff failed to give written notice to the defendants of the proposed sale of the collateral—please answer the following:

What loss, if any, was caused to the defendants by the failure to give notice of the sale of the collateral?

Amount $__None__.

*PROPOSITION NO. 4*

What is the deficiency balance, if any, on the promissory note, including interest as provided in the note, after applying the proceeds of the disposition of the collateral to the reasonable expenses of holding,

---

1. The record of car sales was:

| Date ('78) | Description | Dealer/Sale Location | Amount |
|---|---|---|---|
| Jan. 19 | 1975 Ford Granada | Dewey Wood Motors | $ 1,500.00 |
| Feb. 17 | 1973 Jaguar | Aagaard Motors | 8,500.00 |
| March 13 | 1973 Porsche | Ride-a-Way Motors | 7,600.00 |
| March 21 | 1975 Ferrari | Aagaard Motors | 13,500.00 |
| March 21 | 1974 Audi | Ride-a-Way Motors | 2,500.00 |
| March 21 | 1975 Porsche | Aagaard Motors | 11,500.00 |
| April 25 | 1975 Alfa-Romeo | Aagaard Motors | 4,500.00 |
| May 5 | 1973 Porsche | Aagaard Motors | 7,100.00 |
| June 20 | 1975 Toyota pickup | R. Kingsland (indiv.) | 2,600.00 |
| June 27 | 1973 BMW | Aagaard Motors | 2,500.00 |
| July 13 | 1973 BMW | Aagaard Motors | 3,000.00 |

preparing for sale and selling, and remainder to the indebtedness?

Amount $148,387.61.

The court entered judgment on those answers.[2]

The debtors contend that the creditor was barred from obtaining a deficiency judgment after the sale of the collateral because the creditor had failed to give to the debtors written notice of the time and place of the sale. The debtors cite authority to support this position. Legal scholars summarize conflict among the various jurisdictions that have adopted the Uniform Commercial Code as follows:[3]

First, some jurisdictions hold that if a creditor fails to give written notice of the time and place of a sale, there can be no deficiency judgment; this is sometimes referred to as the "no notice, no deficiency rule."

Second, there are jurisdictions which hold that failure to give notice does not force a forfeiture, but puts the burden of proof on the creditor to prove that a commercially reasonable sale had been effected and that the debtor had not suffered because of an inability to appear at such sale.

Third, a number of jurisdictions hold in substance with the second summarization above, but adopt a rebuttable presumption that the inventory had a value equal to or greater than the debt.

A careful reading of the cases cited to support each of the above rules would suggest that there is not a conflict between the various cases as great as suggested. Some of the holdings of this Court have been classified by scholars as putting this jurisdiction within the first, and others, in the second, rule.[4] *Zions First National Bank v. Hurst*, Utah, 570 P.2d 1031 (1977), has been cited as holding that the failure to give notice does not prevent the granting of a deficiency judgment. It had taken a floor-

ing guarantee from principals of the company. The principal in question had signed a flooring guarantee of $50,000.00. The airplanes were sold without proper notice; deficiency judgment was entered against the guarantor for $50,000.00. This Court observed that the sale of the airplanes would have had to bring more than three times that realized at the sale before the guarantor's liability would have been affected. However, this Court's decision in *FMA Financial Corp. v. Pro-Printers*, Utah, 590 P.2d 803 (1979), has been cited for exactly the opposite rule. In the *FMA* case, no notice had been given. The finder of fact concluded no commercially reasonable sale had been held. The inventory had been sold for a fraction of what it was worth on the books of all concerned, and it was sold at a private sale with three bidders. Two of the bidders were what is referred to as "accommodation bidders," persons bidding with no real intention of making a purchase, and a third bidder anticipated an immediate profit on a resale. While the *FMA* case does not contain language susceptible of the interpretation that a failure to give proper notice of the pending sale prohibits any deficiency, the Court did not stop its inquiry after recognizing the failure to give written notice. The Court considered the issue of whether the sale had been conducted in a commercially reasonable fashion. In that case there is also circumstantial evidence that the inventory was in fact of a value equal to or greater than the debt. Our analysis of many of the apparently conflicting holdings in other jurisdictions finds similar implications. It is noted that there must be some basis in fact for the presumption indulged that the security has a value equal to or greater than the debt.

We are aware of the two conflicting worthy motivations present. First, the creditor should be motivated to obey the law and

---

2. The verdict was seven to one; one juror in dissent. This is acceptable; see Rule 47(q).

3. *Clark Leasing Corp. v. White Sands Forest Prod., Inc.*, 87 N.M. 451, 535 P.2d 1077 (1975). Also, Utah Law Review, Vol. 3, p. 567 (1979).

4. Utah Law Review, note 3, supra.

give the notice required, thereby giving the debtor opportunity to redeem the merchandise and/or secure other bidders, or to at least observe the mechanics of the sale.[5] Second, the Uniform Commercial Code states that the Code should not be interpreted to effect forfeitures or punitive results.[6]

■ In this case, everyone involved knew the sale of the securities could never remove the debt. The only question is the implied possible presumption that there should have been a credit equal to the floored value, that is, the book value on the flooring account of each of the items. The value of this inventory was speculative. There are two items, the Ford Granada and the Toyota pickup, found in current value publications applicable to the area. The items were turn-ins on earlier sales. The character of the other, more exotic cars, frequently of older vintage, would imply that the condition of the vehicle at the time of sale was of critical importance. There is evidence that the Ferrari had front-end damage, and other vehicles had upholstery damage, etc. Some had been in inventory a long time. Even the son's testimony in this case would tend to suggest that, in order to effect maximum recovery from the sale of these specialty vehicles, it would be necessary to literally look for the particular individual who might conceivably be interested in a given older vehicle at the moment. While all of the sales were in the Salt Lake City area, after advertising in Utah publications only, there is evidence to support the jury's finding that the sales were done in a commercially reasonable manner.

■ We hold that, on the facts of this case, the issues were properly presented to the jury. The burden of proving that the sale was conducted in a commercially reasonable manner was on the bank, and carried by the bank.

There was conflict in the evidence as to the method by which the cars were sold, how the boat was cared for and sold, and what should have been realized in their sales. Direct conflicting evidence was presented on the value of a few of the units. The jury, after being properly instructed, fixed the deficiency.

The bank has taken vigorous issue with the trial court's conclusion that this particular sale was controlled by the Uniform Commercial Code. It points out that the note was signed after the inventory had been repossessed and the methods of future sales fully discussed. We are willing for the purpose of this opinion to regard the issue as moot. But the bank has prevailed on the jury's findings.

■ The father also asserts the note is not enforceable because no legal consideration was given for its execution. The transaction grouped all of the son's past debts, regardless of whether they were incurred via the flooring of the cars, personal loan, bad checks, or selling out-of-trust, into one transaction. The agreement calculated the amount due on all items; the open issue was what the security would sell for. The agreement further delayed the date due on the debt for about three months. There was consideration for the note.[7]

The judgment is affirmed.

CROCKETT, C. J., and WILKINS, HALL and STEWART, JJ., concur.

MAUGHAN, J., does not participate herein.

---

5. Utah Code Annotated 1953, 70A–9–504(3).

6. Utah Code Annotated 1953, 70A–1–106.

7. See 11 Am.Jur.2d, Bills and Notes, Sec. 227; *Southern Frozen Foods v. Hill*, 241 S.C. 524, 129 S.E.2d 420 (1963).