PIONEER DODGE CENTER, INC., a corporation, Plaintiff and Respondent,

v.

Marlene GLAUBENSKLEE, Defendant and Appellant.

No. 17568.

Supreme Court of Utah.

June 4, 1982.

Bruce Plenk, Salt Lake City, for defendant and appellant.

David J. Berceau of Robert Ryberg & Associates, Salt Lake City, for plaintiff and respondent.

STEWART, Justice:

Defendant Marlene Glaubensklee appeals from a deficiency judgment entered against her after the sale of a repossessed truck by the plaintiff Pioneer Dodge Center, Inc. We are asked to decide whether the sale of the truck was conducted in a commercially reasonable manner and, if not, whether Pioneer Dodge is barred from recovering the deficiency from defendant.

Defendant purchased a truck from Pioneer Dodge on February 9, 1976, at a purchase price of $4,995, plus tax and license fees for a total of $5,204.88. Chrysler Credit Corporation financed $3,909.89 and defendant traded in her vehicle for a credit of $995 and paid $300 cash. Defendant failed to make the first payment on the note, which called for 36 monthly payments of $138.31 after an initial payment of $200. Chrysler Credit repossessed the truck and, pursuant to a repurchase arrangement with Pioneer Dodge, delivered the truck to Pioneer which paid off the $4,433.42 due. Subsequently, Pioneer Dodge sent notice to defendant that the truck would be sold and that she could make her bid on April 30, 1976, at Pioneer Dodge at 11:00 a. m. Pioneer states that beginning April 12 it began its search for buyers by placing the car on its lot and taking it to five or six local car dealers from whom verbal bids of unknown amounts were received. It was also offered to wholesalers, but the record does not disclose what their responses were.

On April 30, 1976, at 10:00 a. m. an announcement was made over the loudspeaker on the lot of Pioneer Dodge that a truck was being sold at auction. The auction lasted 30 minutes to one hour. Pioneer Dodge entered the sole bid and purchased the truck for $3,700.

Pioneer Dodge filed this action to recover the deficiency. The trial court held that the sale was conducted in a commercially reasonable manner and that the notice given defendant was adequate. The court awarded a deficiency judgment in the amount of $655.27, and attorney's fees of $1,000.

The central issue is whether the sale was conducted in compliance with Utah Code Ann., 1953, § 70A–9–504(3), which provides:

Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable.... [R]easonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent to any other secured party from whom the secured party has received (before sending his notification to the debtor or before the debtor's renunciation of his rights) written notice of a claim of an interest in the collateral. The secured party may buy at any public sale and if the collateral is of a type customarily sold in a recognized market or is of a type which is the subject of widely distributed standard price quotations he may buy at private sale.

On the facts of this case, defendant cannot claim any benefit from the error in the notice of sale. Although the auction actually commenced at 10:00 on the day specified, defendant did not appear at 11:00 a. m., the time stated in the notification. Because defendant took no action—indeed, did not even appear personally—to protect her interest in the sale at the later time stated in the notice to her, she was not prejudiced by the error in the designation of the hour of the sale.

Her failure to attend the sale or otherwise take action to protect her interests at the sale, does not, however, relieve

the plaintiff from its burden of proving that the sale was conducted in a commercially reasonable manner· as required by § 70A–9–504(3). *FMA Financial Corp. v. Pro-Printers*, Utah, 590 P.2d 803 (1979). Section 70A–9–504(3) requires that "every aspect of the disposition including the method, manner, time, place,· and terms must be commercially reasonable." A· public sale after default "has traditionally meant 'a sale in which the public, upon proper notice, is invited to participate and given full opportunity to bid upon a competitive basis for the property placed on sale, which is sold to the highest bidder.' " *In re Webb*, 17 UCC Rep. 627, 630 (S.D.Ohio 1975) (quoting Annot., 4 A.L.R.2d 575 (1949)). The requirement of a public invitation is essential for a public sale under the Uniform Commercial Code. *In re Webb, supra; Mallicoat v. Volunteer Finance and Loan Co.*, 57 Tenn.App. 106, 415 S.W.2d 347 (1966). It is fundamental that a public sale presupposes posting public notices or advertising. *In re Bishop*, 482 F.2d 381 (4th Cir. 1973); *In re Webb, supra; Mercantile Financial Corp. v. Miller*, 292 F.Supp. 797 (E.D.Penn.1968); *Gezon Motors v. Gould*, 18 UCC Rep. 1339 (D.C.Mich.1976); *Investor's Acceptance Co. of Livingston, Inc. v. James Talcott Inc.*, 61 Tenn.App. 307, 454 S.W.2d 130 (1969). The Restatement of Security § 48 comment (1941) defines a public sale as "one to which the public is invited by advertisement to appear and bid at auction for the goods to be sold."

A factual situation somewhat like the instant was presented in *In re Bishop*, 482 F.2d 381 (4th Cir. 1973). The buyer of a boat defaulted, and the secured party repossessed and moved it to a used car lot. The court stated that the secured party did not

   ... advertise the sale in any newspaper. It posted no sign announcing the event. [The secured party's] collection manager testified he mentioned the sale to anyone he thought would be interested. The credit manager, who held the sale, testified that he neither advertised it nor invited anyone to attend. No one passing the lot could have known an auction was

taking place. Other than [the secured party's] representatives, only two people were present at the sale. The manager admitted that they were probably employees of the used car lot. One of them, possibly both, bid at the sale but how high they bid is not shown. [The secured party] purchased the collateral . . . .

*Id.* at 384. The court held the sale was not commercially reasonable, and, quoting 2 G. Gilmore, Security Interests in Personal Property 1242 (1965), stated:

   Presumably the essence of a 'public sale' is that the relevant public is not only invited to attend but is also informed, by whatever means of publicity may be appropriate, when and where the sale is to be held. If the sale has not been appropriately publicized, it would not be a public sale no matter where it was held or how it was conducted.

484 F.2d at· 384. See also *American Business Credit Corp. v. Kirby*, 122 Cal.App.3d 217, 175 Cal.Rptr. 720 (1981) (holding that advertising the sale of a vehicle in a newspaper of general circulation that primarily carried legal notices and giving notice to five dealers and auctioneers did not meet the requirements of a commercially reasonable sale); *Levers v. Rio King Land and Investment Co.*, 93 Nev. 95, 560 P.2d 917 (1977); *In re Webb*, 17 U.C.C.Rep. 627, 631 (S.D.Ohio 1975) ("[w]ith no evidence at all that the public was invited by newspaper advertisement, poster, bulletin, or broadside, or by radio or television announcement to attend the sale . . ., we must find that a public sale was not held . . . .")

On the other hand, *Credit Alliance Corp. v. B & P Excavating, Inc.*, 31 U.C.C.Rep. 1784 (S.D.N.Y.1981), held that a repossessed vehicle had been sold at a commercially reasonable sale on the basis that "[i]n addition to a private circular sent to potential buyers, notice of the sale was published a total of four times in two different newspapers on four separate days immediately prior to the sale; the advertisements and private notices specified the time, place and terms of the sale." *Id.* at 1788. Similarly, in *Credit Alliance Corp. v. David O. Crump*

*Sand & Fill ·Co.*, 470 F.Supp. 489 (S.D.N.Y. 1979), held that the sale of a truck was conducted in a commercially reasonable manner where the secured party advertised in three local newspapers for four days preceding the default sale, specifying time and place of sale, as well as description of the truck and terms of payment.

Based on the above principles, we do not think that the car in this case was advertised or sold in a commercially reasonable manner. The only efforts to obtain buyers consisted of taking the truck to a few lots and obtaining oral bids of undisclosed amounts; placing the truck on the sales lot for a few days; and announcing the sale over the loudspeaker immediately prior thereto. These efforts did not give reasonable notice to that part of the public which would likely be interested in the sale.

■ Although there may be exceptions, see generally *Utah Bank & Trust v. Quinn*, Utah, 622 P.2d 793 (1980), we think that in general an automobile dealer should advertise a repossessed car in a newspaper of general circulation for a reasonable period of time and in a manner consistent with the manner by which other used cars are advertised. Because the sale in the instant case was not conducted in a commercially reasonable manner, plaintiff is barred from obtaining a deficiency judgment. *FMA Financial Corp. v. Pro-Printers*, Utah, 590 P.2d 803 (1979).

The judgment is reversed. Costs to appellant.

HALL, C. J., and OAKS, HOWE and DURHAM, JJ., concur.