HAGGIS MANAGEMENT, INC., a Utah corporation, Plaintiff and Appellant,

v.

TURTLE MANAGEMENT, INC., Jeoffrey Meacham, Stephen McCaughey and Dan Lee Briggs, Defendants and Respondents.

No. 19017.

Supreme Court of Utah.

Oct. 3, 1985.

Rehearing Denied Nov. 2, 1987.

Robert Felton, Salt Lake City, for plaintiff and appellant.

B.L. Dart, Paul H. Proctor, Kent M. Kasting, (McCaughey), Salt Lake City, for defendants and respondents.

HALL, Chief Justice:

Plaintiff Haggis Management, Inc. (Haggis), challenges an adverse summary judgment in an action for a deficiency judgment against guarantors of a secured promissory note. Based on undisputed facts set forth below, the trial court concluded Haggis had failed to make a commercially reasonable disposition of the collateral, contrary to the requirement of U.C.A., 1953, § 70A–9–504(3) (1980 ed.), and was therefore barred from recovering a deficiency judgment. We affirm.

In 1978, plaintiff sold a restaurant and private liquor club in Salt Lake City, Utah, known as "The Haggis," to Turtle Management, Inc. (Turtle), for $350,000, with $100,000 down and a promissory note for $250,000. As part of the purchase agreement and to secure the note, Turtle granted Haggis a security interest in the club's "furniture, fixtures, equipment, inventory, accounts receivable and proceeds therefrom." In addition to the purchase agreement, Turtle executed a separate security agreement, granting Haggis a security interest in certain itemized furniture and equipment. Defendants Jeoffrey Meacham, Stephen McCaughey and Dan Lee Briggs (guarantors) guaranteed the note.

In July 1980, Turtle defaulted on the note, leaving a principal balance of over $167,000, and closed the club. Haggis brought this action, obtained a default

judgment against Turtle, and took possession of the club premises and property. Turtle filed a petition for liquidation in bankruptcy; however, the trustee in bankruptcy abandoned the collateral to Haggis. The collateral had been appraised at a value of about $30,000.

After being restored, the club was then reopened for business and operated for several months. Ultimately, it was sold in a private transaction to Chianti Management, Inc. (Chianti), for $110,000. No notice was given to guarantors before this sale and there was no prior advertising or bidding although a few inquiries to potential buyers were made.

Neither the parties' briefs nor the record clearly discloses the events occurring after Haggis repossessed the collateral and before the sale to Chianti. It appears, however, that, before the sale to Chianti, the club and collateral were privately transferred on two occasions to organizations formed by some of the principals of Haggis. Again, no notice of the transfers was given to guarantors and there was no advertising or bidding before the transfers.

Of course, summary judgment is proper only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.[1] Viewing the above facts and all inferences that may be reasonably drawn from them in the light most favorable to plaintiff,[2] there is no genuine issue of material fact and guarantors are entitled to judgment as a matter of law.

U.C.A., 1953, § 70A–9–504 (1980 ed.) authorizes a secured party, after default, to "sell, lease or otherwise dispose of any or all of the collateral,"[3] to apply the proceeds to satisfaction of the debt[4] and to recover the deficiency from the debtor.[5] The statute also requires, however, that "every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable."[6]

Not every transfer of collateral by a secured party is a disposition for purposes of section 9–504.[7] Thus, in this case, the threshold issue presented is whether either of the transfers of the collateral that occurred before the sale to Chianti was a disposition under section 9–504. Conceding that there was a disposition, Haggis does not address this issue in its briefs. Guarantors contend that each of the transfers, alternatively, was a disposition within the contemplation of section 9–504. The circumstances and terms of the transfers of the collateral before the sale to Chianti are not adequately disclosed in the record to enable us to determine whether either of those transfers was a resale or disposition of the collateral which discharged the security interest.[8] For reasons set forth below, however, we conclude that none of the transfers, if assumed to be a disposition under section 9–504, was commercially reasonable. Thus, we need not decide which of the transfers was a disposition under section 9–504.[9]

Subsection (3) of section 9–504 provides: Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. . . . Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, if he has not signed after default a statement renouncing or modifying his right to notification of sale.

All of the transfers of the collateral in this case were "private proceedings." Haggis concedes that under the above subsection

1. *See* Utah R.Civ.P. 56(c); *Haslem v. Ottosen,* Utah, 689 P.2d 27, 28 (1984).

2. *Haslem,* 698 P.2d at 28.

3. U.C.A., 1953, § 70A–9–504(1) (1980 ed.).

4. *Id.* at –504(1)(b).

5. *Id.* at –504(2).

6. *Id.* at –504(3).

7. *See id.* at –504(5); *See also Weast v. Arnold,* 299 Md. 540, 474 A.2d 904, 912 (1984); *Reeves v. Associates Fin. Servs. Co.,* 197 Neb. 107, 115–16, 247 N.W.2d 434, 439 (1976); *Rhoten v. United Virginia Bank,* 221 Va. 222, 229–30, 269 S.E.2d 781, 785–86 (1980).

8. *Cf. Reeves,* 197 Neb. at 115–16, 247 N.W.2d at 439.

9. Assuming the transfers before the sale to Chianti were not resales or dispositions under section 9–504, Haggis could nevertheless properly continue the action on behalf of the transferee, the real party in interest. *See* Utah R.Civ.P. 25(c).

guarantors were entitled to notification of the time after which a sale of the collateral would be made [10] and that no such notification was given. Haggis argues guarantors nevertheless had actual notice of a disposition because they were aware the collateral had been repossessed by Haggis and abandoned by the trustee in bankruptcy. The latter assertion is without support in the record. Further, even assuming that a debtor's actual knowledge of the disposition would relieve a secured party of the specific notice requirement of section 9–504(3), which we do not decide, guarantors' knowledge of Haggis' repossession of the collateral gave them no notice of which of the many available creditors' remedies Haggis would elect to pursue. Thus, formal notice was required.

◼ Whether proper notice of the disposition was sent to the debtor is but one factor to be considered in determining whether the disposition was commercially reasonable under section 9–504(3). In addition, we must consider whether "every aspect of the disposition including the method, manner, time, place and terms" [11] was commercially reasonable. Of prime importance, are the secured party's attempts to obtain a fair price for the collateral by advertising the collateral or otherwise notifying potential buyers that the collateral is for sale.[12] Haggis asserts that, before the sale to Chianti, potential buyers were solicited. The record shows that there was no advertisement or public notice of sale and that, at most, only a few potential buyers were contacted and no firm bids were received before the sale to Chianti. Such minimal efforts are insufficient as a matter of law to establish that the collateral was sold in a commercially reasonable manner.[13]

◼ Generally, a secured party who fails to dispose of collateral in a commercially reasonable manner is barred from recover-

ing a deficiency judgment.[14] Inasmuch as the disposition of the collateral in this case was not commercially reasonable, Haggis is barred from recovering a deficiency judgment against guarantors.

◼ Relying on U.C.A., 1953, § 70A–9–507(1) (1980 ed.) and our decision in *Zions First National Bank v. Hurst*,[15] Haggis argues that guarantors' exclusive remedy is in damages. Haggis asserts the fair market value of the collateral has been established by appraisal to be $30,000 and offers to credit guarantors with that amount in determining a deficiency.

Section 507(1) states:

If it is established that the secured party is not proceeding in accordance with the provisions of this part disposition may be ordered or restrained on appropriate terms and conditions. If the disposition has occurred the debtor or any person entitled to notification ... has a right to recover from the secured party any loss caused by a failure to comply with the provisions of this part.

In *Hurst*, noting the above section, we did not bar the secured party from recovering a deficiency judgment although proper notice of the resale of the collateral had not been given to the debtor.

This Court previously held in *FMA Financial Corp. v. Pro-Printers*,[16] that the remedy in damages provided by section 507(1) is not exclusive. We noted in *Pro-Printers* that the issue of whether failure to give notice barred recovery of a deficiency was not properly raised in *Hurst*. Moreover, in *Hurst* neither the Court nor the parties addressed whether, aside from the failure to give notice, the disposition of the collateral was not commercially reasonable. Although we are generally reluctant to bar recovery of deficiency judgments, our conclusion in this case that the disposi-

---

**10.** We have previously held that section 9–504(3) requires that notification of disposition of the collateral be given to a guarantor. *Zions First Nat'l Bank v. Hurst*, Utah, 570 P.2d 1031, 1033 (1977); *See also* U.C.A., 1953, § 70A–9–105(1)(d) (1980 ed.) (definition of "debtor").

**11.** U.C.A., 1953, § 70A–9–504(3) (1980 ed.).

**12.** *Compare Scharf v. BMG Corp.*, Utah, 700 P.2d 1068 (1985) (secured party who diligently sought out potential buyers and sold to highest bidder in private sale disposed of collateral in commer-

cially reasonable manner.), *with Pioneer Dodge Center, Inc. v. Glaubensklee*, Utah, 649 P.2d 28, 31 (1982) (failure to give reasonable notice to that part of public likely to be interested in sale rendered public sale not commercially reasonable).

**13.** *Id.*

**14.** *See Glaubensklee*, 649 P.2d at 31; *FMA Fin. Corp. v. Pro-Printers*, Utah, 590 P.2d 803, 807–08 (1979).

**15.** 570 P.2d 1031.

**16.** 590 P.2d 803.

tion of the collateral was not commercially reasonable warrants such a result.

Finally, Haggis contends certain deposition testimony is not properly included in the record on appeal and thus may not be relied on by this Court in determining the propriety of the decision below. We find it unnecessary to rely on any of the challenged portions of the record in reaching our decision; thus we need not address this contention.

Affirmed.

HOWE, J., and HYDE, District Judge, concur.

STEWART, Justice (dissenting):

I dissent. The majority sustains the trial court's determination made in a summary judgment that the sale of assets in this case was commercially unreasonable. Therefore, the seller forfeits all right to a deficiency judgment. Whether the sale was commercially reasonable depends upon the inferences and conclusions drawn from the facts in this case. Where different inferences and conclusions can be drawn, summary judgment is inappropriate, even if the underlying facts are not disputed. Ultimate questions of mixed fact and law— such as the instant case—are not to be decided by a judge in derogation of a party's right to trial by jury. *Butler v. Sports Haven International*, Utah, 563 P.2d 1245, 1246 (1977).

This rule is in accord with what numerous other courts have held. Even though the basic evidence is not in conflict, summary judgment is not appropriate if a jury could draw differing but reasonable conclusions from that evidence. *See, e.g., ITT Terryphone Corp. v. Modems Plus, Inc.*, 171 Ga.App. 710, 320 S.E.2d 784, 787 (1984); *Lundy v. Hazen*, 90 Idaho 323, 411 P.2d 768, 770 (1966). In this case, a jury trial had been demanded, and the case should have been submitted to a jury.

In *Scharf v. BMG Corp.*, 700 P.2d 1068 (1985), we recently stated:

Since the statutory standard of commercial reasonableness cannot be measured with a bright-line test, whether any particular sale is commercially reasonable is to be determined on a case-by-case basis. That determination depends on whether the circumstances of the sale and the manner and business context in which it occurred support a conclusion that the sale was conducted in a commercially reasonable manner.

*Id.* at 1070.

The majority asserts that the sale to Chianti was commercially unreasonable because (1) there was "no advertisement or public notice of sale," (2) only a few potential buyers were contacted, (3) no firm bids were received before the sale to Chianti, and (4) the guarantors were not given formal notice of the private sale. The majority opinion, I submit, ignores the most crucial proposition, that summary judgment is inappropriate where a factual inquiry is necessary to decide the dispute, or where reasonable persons could draw a different conclusion from the facts and law governing this case.

The majority states that the sale was without advertisement. That is true, but of no legal significance. Section 70A-9-504(3) specifically provides that "[d]isposition of the collateral may be by public *or private* proceeding...." (Emphasis added.) If plaintiff was required to dispose of the collateral by public sale, "[i]t is fundamental that a public sale presupposes posting public notices or advertising." *Pioneer Dodge Center v. Glaubensklee*, Utah, 649 P.2d 28, 30 (1982). But public notice is not required for private sales. *Hall v. Owen County State Bank*, 175 Ind.App. 150, 370 N.E.2d 918 (1977). In fact, public notice or advertising may, as a general proposition, be commercially *unreasonable*, and may well have been so on the facts of this particular case. Commercially reasonable selling procedures for disposing of collateral are outlined in § 70A-9-507(2), which provides: "If the secured party either sells the collateral in the usual manner in any recognized market therefor or if he sells at the price current in such market at the time of his sale *or if he has otherwise sold in conformity with reasonable commercial practices among dealers in the type of property sold he has sold in a commercially reasonable manner." (Emphasis added.)*

What the "reasonable commercial practices" of sellers of private clubs are was not established by the moving party in this case, but it is clear beyond peradventure that a private club is a unique article for which there is only a limited market. Most assuredly it is not like a commonly traded and essentially fungible item such as an automobile. Compare *Pioneer Dodge Center v. Glaubensklee, supra*. A qualified purchaser would initially have to have substantial funds to acquire a club and the necessary operating capital to create the

requisite cash flow. Financing such a purchase is often done on terms unique to the deal. If profits from the operation of the club are to be used to help finance the purchase, the personal background and experience of the purchaser may be critical if the purchaser is to succeed in owning and managing the club.

Where unique collateral or special qualifications of a purchaser are involved, public notice of sale has been held to be commercially *unreasonable.* In *United States v. Terrey,* 554 F.2d 685 (5th Cir.1977), the court held that personal solicitation of bids for a private sale would be the commercially reasonable method of disposing of the unique collateral. *Id.* at 695. The appropriateness of personal solicitations and the inappropriateness of widely publicized notice of sale of unique collateral has also been recognized by other courts. For example, in *Dynalectron Corp. v. Jack Richards Aircraft Co.,* 337 F.Supp. 659 (W.D. Okla.1972), the court refused to find a sale commercially reasonable because the seller did not make normal and reasonable contacts within the industry likely to purchase the aircraft he was selling. *Id.* at 663.

This case is factually highly similar to *First National Bank & Trust Co. v. Halston,* 20 U.C.C.Rep.Serv. 1124 (Okla.1976). In that case, the court held that a secured creditor conducted a sale of the fixtures and inventory of a grocery store in a commercially reasonable manner, even though it was sold at a private sale. In an attempt to find prospective buyers, the secured creditor contacted the sales manager for Affiliated Foods and several other grocery store owners in the area but no one made an offer to purchase. No advertising was placed in newspapers, handbills or trade journals. Only one offer was received, which was eventually accepted. The court ruled that the disposition was made in keeping with prevailing trade practices among "reputable and responsible business and commercial enterprises engaged in the same or a similar business[,]" *id.* at 1128, and sustained the lawfulness of the sale. The court noted that the policy of the Uniform Commercial Code is "to provide flexibility in the disposition of collateral, and to encourage disposition by private sale through regular commercial channels." *Id.* (Footnotes omitted.) In light of these considerations, it was not, as a matter of law, commercially unreasonable for Haggis to personally solicit bids and refrain from public advertising.

The majority also relies on the fact that only a few potential buyers were contacted by Haggis. Although only a handful were contacted, that is no basis for concluding that as a matter of law the number was insufficient. The number of potential buyers was certainly highly limited. However, I doubt that the majority would find the sale commercially unreasonable if only one buyer were contacted but the proceeds of the sale exceeded the amount of the debt. It is not simply the number of buyers contacted, but how the sale as a whole was conducted which governs whether it was conducted in a commercially reasonable manner. The record shows that Haggis contacted people in Park City, Salt Lake City and Ogden. Some of the people contacted were current or previous owners of other private clubs and restaurants. Haggis also notified the representative of the Utah Private Club Association that the Haggis club was for sale and asked him to refer potential purchasers to Haggis. An attorney contacted Haggis on behalf of undisclosed clients.

From these inquiries and solicitations, Haggis received two offers to purchase, one from Chianti for $110,000, and another from a buyer in Park City for $50,000, subject to available financing. On the face of it, at least, it was not commercially unreasonable for Haggis to accept the offer from Chianti.

Another fault that the majority finds with Haggis' sale was that no firm bids were received before the sale to Chianti. But as noted above, the law is not that more than one bid must be received to make a sale commercially reasonable. However, when only one bid is received, it is, of course, critical to examine the terms of sale with great care to determine that it was fair and reasonable. This examination, being of the particular facts and circumstances of the case, is singularly inappropriate for disposition by summary judgment.

The majority also, after conceding that notice is only one factor to be considered in determining whether a sale was commercially reasonable, holds that Haggis was required to give formal notice of the impending sale to the guarantors. The purpose of notice to the debtor is to enable the debtor to protect his or her interests. Where the debtor is actually aware of the impending sale, as the guarantors here were, the debtor has had an adequate op-

portunity to protect his or her interests and formal notice is not necessary. For all practical purposes, formal notice to the guarantors would have been of minimal, if any, value. Haggis had repossessed the collateral. Turtle was in bankruptcy, and its trustee had abandoned the property to Haggis. Lack of formal notice did not prejudice the guarantors' rights.

Because I believe that the commercial reasonableness of the disposition of the collateral to Chianti should be tried by a jury, I note the following in respect to the transfer or transfers of the collateral to Eeslew or Weslee after repossession of the collateral, but before the sale to Chianti: whether they were commercially reasonable dispositions of the collateral may depend upon whether they were dispositions within the meaning of § 9–504. However, as the majority acknowledges, "not every transfer of collateral by a secured party is a disposition for purposes of § 9–504." On the record before us, it is impossible to determine how these transfers should be classified. The record is so unclear that we cannot ascertain whether one or two transfers occurred and what the conditions of, or reasons for, those transfers were. Because the party moving for summary judgment has the burden of establishing his right to judgment on the basis of the applicable law applied to undisputed facts, and the moving party has failed to show here that the transfers were dispositions within the meaning of § 9–504, I would reverse and remand for trial.

DURHAM, J., concurs in the dissenting opinion of STEWART, J.,

ZIMMERMAN, J., having disqualified himself, does not participate herein.

HYDE, District Judge, sat.