**CHRYSLER DODGE COUNTRY, U.S.A., INC., a Utah corporation, Plaintiff and Respondent,**

v.

**Louise CURLEY, Defendant and Appellant.**

No. 880424–CA.

Court of Appeals of Utah.

Nov. 2, 1989.

As Amended Nov. 20, 1989.

Richard A. Hummell, Ogden, for defendant and appellant.

N. George Daines, Logan, for plaintiff and respondent.

Before DAVIDSON, BILLINGS and JACKSON, JJ.

## OPINION

BILLINGS, Judge:

Appellant Louise Curley ("Ms. Curley") appeals from a deficiency judgment entered against her after her repossessed truck was sold by Respondent Chrysler Dodge Country, U.S.A., Inc. ("Chrysler Dodge"). Ms. Curley claims Chrysler Dodge is barred from recovering any deficiency because it violated Navajo Tribal law and/or conducted the sale of the truck in a commercially unreasonable manner. We affirm.

Ms. Curley purchased a truck from Chrysler Dodge on April 4, 1985. The purchase price was financed by Chrysler Credit Corporation ("Chrysler Credit"). Under this retail installment contract, Chrysler Dodge was required to repurchase the truck in the event of default.

Ms. Curley, after making several monthly payments, gave the truck to her brother-in-law, Ernest Hawthorne, who agreed to make payments on the vehicle. Ultimately, Mr. Hawthorne ceased making payments on the loan. Chrysler Credit repossessed the truck and delivered the truck to Chrysler Dodge. As required by their contract, Chrysler Dodge paid Chrysler Credit the balance due on the contract.

The truck was delivered to Chrysler Dodge in rough condition. Chrysler Dodge repaired and cleaned the truck and placed it on its car lot for sale. The truck was advertised and shown on the lot with little interest from prospective purchasers. Chrysler Dodge then solicited bids for the truck from other dealers. Chrysler Dodge received three bids on the vehicle, all within a $200 price range.

On June 4, 1987, Chrysler Dodge sent a certified letter to Ms. Curley at her brother-in-law's home, the address from which payments had last been received. The notice stated the car was going to be sold on June 22, 1987, and that, following the sale, Ms. Curley may be responsible for any deficiency. The certified mail signature card was returned with a signature purporting to be Ms. Curley's. At trial, it was revealed that the signature was not hers.

The vehicle was sold to Davis Chrysler Dodge, a related dealership, for $2,350, a price higher than Chrysler Dodge or any other dealer had bid.

Based upon the foregoing facts, the trial court found Navajo Tribal law did not apply and that the sale of the truck was conducted in a commercially reasonable manner. Chrysler Dodge was awarded a deficiency judgment of $3,241.36.

Ms. Curley appeals the trial court's decision, claiming that the truck was repossessed from the Navajo reservation without her permission or a Tribal court order in violation of Navajo Tribal law and, thus, the deficiency judgment should be vacated. Alternatively, she claims the deficiency judgment is void because the truck was not sold in a commercially reasonable manner.

## NAVAJO TRIBAL LAW

Ms. Curley claims Navajo Tribal law governs this case. *Babbitt Ford, Inc. v. Navajo Indian Tribe*, 710 F.2d 587 (9th Cir. 1983), *cert. denied*, 466 U.S. 926, 104 S.Ct. 1707, 80 L.Ed.2d 180 (1984) (Tribal code will be enforced against a non-Indian auto dealer located off the reservation if it repossessed a vehicle from a member of the tribe on tribal lands). Ms. Curley contends Chrysler Credit[1] violated Navajo Tribal

---

1. Because of our holding concerning the applicability of Navajo Tribal law, we do not reach the issue of whether Chrysler Dodge should be barred from collecting its deficiency judgment

law when it repossessed the truck from her brother-in-law's home, which she claims is on the Navajo reservation, without her permission or a Navajo Tribal Court order as required by section 607 of the Navajo Tribal Code.[2]

■ The two-part test for application of section 607 of the Navajo Tribal Code requires that (1) the personal property belong to *Navajo Indians,* and (2) the property must be repossessed on the reservation without written consent of the purchaser or a Tribal court order.

There is no evidence in the record that Ms. Curley or her brother-in-law are members of the Navajo Indian tribe.[3] Her counsel asserts on appeal that her Tribal membership was never challenged at trial. However, Ms. Curley had the burden to demonstrate that Navajo Tribal law provided a defense to the deficiency judgment and thus had the burden to introduce evidence of her tribal membership. Alternatively, Ms. Curley argues that it was apparent to anyone at trial from her physical appearance that she is a Navajo Indian. However, the trial court made no such finding, but rather concluded that Tribal law did not apply. On the record before us, we cannot say this was error.

## COMMERCIALLY REASONABLE SALE: SECTION 70A–9–504(3)

Ms. Curley further claims the disposition of the truck was not commercially reasonable because (1) Chrysler Dodge failed to give her notice of the sale; (2) the truck

was sold to a related company in an improper private sale; (3) there was insufficient advertising and bid solicitation and thus Chrysler Dodge did not obtain the best price for the truck. As a result, Ms. Curley contends Chrysler Dodge may not collect its deficiency judgment.

The trial court's holding that the sale of Ms. Curley's truck was commercially reasonable is a conclusion of law, not a factual finding, and thus, our standard of review is correction of error. *Scharf v. BMG Gorp.,* 700 P.2d 1068, 1070 (Utah 1985).

Utah Code Ann. § 70A–9–504(3) (1980) governs commercial disposition of collateral:

Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or any other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, if he has not signed after default a statement renouncing or modifying his right to notification of sale. . . .

---

because of Chrysler Credit's possible violation of Navajo Tribal law.

**2.** The Navajo Tribal Code § 607 (1985) provides:
   The personal property of Navajo Indians shall not be taken from the territorial jurisdiction of the Navajo Nation under the procedures of repossession except in strict compliance with the following:
   (1) Written consent to remove the property from the territorial jurisdiction of the Navajo Nation shall be secured from the purchaser at the time repossession is sought. . . .
   (2) Where the Navajo refuses to sign said written consent to permit removal of the property from the jurisdiction of the Navajo Nation, the property shall be removed only by order of a District Court of the Navajo Nation in an appropriate legal proceeding.

**3.** The Navajo Tribal Code § 501 (1978) provides:
   The membership of the Navajo Tribe shall consist of the following persons:
   (1) All persons of Navajo blood whose names appear on the official roll of the Navajo Tribe maintained by the Bureau of Indian Affairs.
   (2) Any person who is at least one-fourth degree Navajo blood, but who has not previously been enrolled as a member of the Tribe, is eligible for Tribal membership and enrollment.
   (3) Children born to any enrolled member of the Navajo Tribe shall automatically become members of the Navajo Tribe and shall be enrolled, provided they are at least one-fourth degree Navajo blood.

The secured party may buy at any public sale and if the collateral is of a type customarily sold in a recognized market or is of a type which is the subject of widely distributed standard price quotations he may buy at private sale.

■ Under this section of the Utah Uniform Commercial Code, the secured party has the burden of proof to establish that the disposition of collateral took place in a commercially reasonable manner including that reasonable notice was given to the debtor. *FMA Fin. Corp. v. Pro–Printers*, 590 P.2d 803, 806–07 (Utah 1979).

■ In Utah, a finding that a creditor failed to dispose of collateral in a commercially reasonable manner has generally been held to bar a deficiency judgment. *Haggis Management, Inc. v. Turtle Management, Inc.*, 745 P.2d 442, 444 (Utah 1985) ("Generally a secured party who fails to dispose of collateral in a commercially reasonable manner is barred from recovering a deficiency judgment"); *Pioneer Dodge Center, Inc. v. Glaubensklee*, 649 P.2d 28, 31 (Utah 1982); *Pro–Printers*, 590 P.2d at 808.[4]

The Utah Uniform Commercial Code does not provide a statutory definition of commercial reasonableness. However, the code does offer some assistance in determining commercial reasonableness. Utah Code Ann. § 70A–9–507(2) delineates several non-exclusive[5] circumstances which are deemed to be commercially reasonable:

> If the secured party either sells the collateral in the usual manner in any recognized market therefor or if he sells at the price current in such market at the time of his sale or if he has otherwise sold in conformity with reasonable commercial practices among dealers in the type of

property sold he has sold in a commercially reasonable manner.

Thus, we consider the sale of the truck against the backdrop of reasonable commercial practices among car dealers who dispose of repossessed vehicles.

In dealing with the issue of commercial reasonableness, the Utah Supreme Court has concluded that the issue of commercial reasonableness is fact sensitive and is thus dependent on the totality of the commercial context.

> [W]hether any particular sale is commercially reasonable is to be determined on a case-by-case basis. That determination depends on whether the circumstances of the sale and the manner and business context in which it occurred support a conclusion that the sale was conducted in a commercially reasonable manner.

*Scharf*, 700 P.2d at 1070–71. *See also IFG Leasing Co. v. Gordon*, 776 P.2d 607, 610 (Utah 1989); *Security State Bank v. Broadhead*, 734 P.2d 469, 472 (Utah 1987); *Haggis Management*, 745 P.2d at 444; *Glaubensklee*, 649 P.2d at 29–31.

### 1. *Self-Dealing*

■ Ms. Curley claims the sale of her truck was commercially unreasonable because it was sold in a private sale to a related dealer. Thus, we begin by analyzing whether Chrysler Dodge conducted a private or a public sale. A public sale

> "has traditionally meant 'a sale in which the public, upon proper notice, is invited to participate and given full opportunity to bid upon a competitive basis for the property placed on sale, which is sold to the highest bidder.'" ... The requirement of a public invitation is essential for a public sale under the Uniform Commercial Code.

---

**4.** However, Justice Zimmerman in a recent opinion in a footnote suggests that the "consequences of a creditor's failure to comply fully with the requirements of section 70A–9–504(3) in disposing of collateral have not been definitively settled in Utah." *Cottam v. Heppner*, 777 P.2d 468, 474 n. 4 (Utah 1989). He claims the supreme court "has never surveyed the available options [absolute bar, set off, and rebuttable presumption] and made a reasoned choice from among alternatives." *Id.* Thus, he concludes the question "remains open in Utah." *Id.* Our

resolution of this case does not require us to resolve this issue.

**5.** In *Scharf v. BMG Corp.*, 700 P.2d 1068 (Utah 1985), the Utah Supreme Court cited the examples of commercial reasonableness given in Uniform Commercial Code § 9–507 (1981). However, the court recognized that the examples were "not the exclusive method of authorized disposition." *Id.* at 1070.

*Glaubensklee,* 649 P.2d at 30 (quoting *In re Webb,* 17 U.C.C. Rep. 627, 630 (S.D. Ohio 1975)).

While Chrysler Dodge displayed the truck on its used car lot and advertised it in the newspaper, it sold the truck to a dealer after soliciting private bids. The "public" was not informed of the date of the sale and was not invited to attend and bid at the sale. Thus, we conclude the truck was sold at a private sale.

■ Ms. Curley claims that under section 70A–9–504(3) of the Utah Uniform Commercial Code the sale was commercially unreasonable because Chrysler Dodge, through a related entity, bought the truck at this private sale. The relevant portion of this section states: "[t]he secured party may buy at any public sale and if the collateral is of a type customarily sold in a recognized market or is of a type which is the subject of widely distributed standard price quotations he may buy at private sale." *Id.* We need not decide whether Chrysler Dodge could purchase the truck at a private sale,[6] as we find Chrysler Dodge did not purchase the truck.

Even though Chrysler Dodge sold the truck to Davis Dodge, which is owned by the same principals, it was not a sale to itself in the classic sense. Davis Dodge submitted a formal bid on the truck, a bid which was higher than the bid Chrysler Dodge, or any other unrelated dealer, made on the truck. A check from Davis Dodge was given to Chrysler Dodge in exchange for the truck. This is not a case of self-dealing or mere paper shuffling to transfer the truck from one corporate entity to another.[7] In fact, the sale to Davis Dodge

netted more than if Chrysler Dodge had sold the truck to the other independent car dealers who submitted bids.

### 2. *Notice*

Ms. Curley also claims she was not given adequate notice of the private sale of her truck. Ms. Curley does not challenge the form of the notice, but claims she did not receive the notice because it was sent to her brother-in-law's home.

Utah Code Ann. § 70A–9–504(3) (1980) does not define "reasonable notification." However, other sections of the Utah Uniform Commercial Code provide some assistance. Utah Code Ann. § 70A–1–201(26) (1989) provides, with our emphasis, that:

A person "notifies" or "gives" a notice or notification to another *by taking such steps as may be reasonably required to inform the other in ordinary course whether or not such other actually comes to know of it.* A person "receives" a notice or notification when:

(a) it comes to his attention; or

(b) it is duly delivered at the place of business through which the contract was made *or at any other place held out by him as the place for receipt of such communications.*

Utah Code Ann. § 70A–1–201(38) (1989) provides, with our emphasis, that:

"Send" in connection with any writing or notice means to deposit in the mail or deliver for transmission by any other usual means of communication with postage or cost of transmission provided for and properly addressed and in the case of an instrument to an address specified thereon *or otherwise agreed,* or if there be none to any address reasonable under

---

**6.** There is a split of authority concerning whether repossessed automobiles fall under the exception of "a recognized market" in Uniform Commercial Code § 9–504(3). *Compare Mount Vernon Dodge, Inc. v. Seattle–First Nat'l Bank,* 18 Wash.App. 569, 570 P.2d 702, 712 (1977) (new and used cars, trucks and campers "are customarily sold in a recognized market and are the subjects of widely distributed standard price quotations"); *with Norton v. National Bank of Commerce,* 240 Ark. 143, 398 S.W.2d 538, 540 (1966) (used automobiles are not "of a type customarily sold in a recognized market" for notice purposes); *Community Management Assoc. v. Tousley,* 32 Colo.App. 33, 505 P.2d 1314,

1315–16 (1973) (repossessed automobiles are not collateral customarily sold in a recognized market for notice purposes).

**7.** *Jackson State Bank v. Beck,* 577 P.2d 168 (Wyo.1978) (secured party did not offer collateral for public sale or private bidding, sold the collateral to itself, and then sold it to a group made up of secured party principals); *Vic Hansen & Sons, Inc. v. Crowley,* 57 Wis.2d 106, 203 N.W.2d 728 (1973) (dealer "sold" repossessed car to itself by means of an inter-office exchange of papers).

the circumstances. The receipt of any writing or notice within the time at which it would have arrived if properly sent has the effect of a proper sending.

Thus, under the Utah Uniform Commercial Code it is not necessary that the debtor actually receive notice, merely that notice is sent to an address where the creditor can reasonably expect to reach the debtor. *See also* J. White & R. Summers, *Uniform Commercial Code*, 1112 (2d ed. 1980).

In *Ford Motor Credit Co. v. Solway*, 825 F.2d 1213 (7th Cir.1987), the court, in considering the notice required in a private sale under the commercial code in similar circumstances, found Ford Motor Credit Company had given reasonable notice when it sent notice to the debtors at places they no longer lived nor worked. The court concluded: "[The debtor] never notified FMCC that he had moved from this address. There is nothing in the record to indicate that FMCC was aware that his home address had changed in the year since he signed the Guaranty." *Id.* at 1219. Thus, the court suggested the debtor has a duty to keep the creditor informed of the proper place to send information and notices.

■ The address on the purchase contract Ms. Curley signed is in Tremonton, Utah. Ms. Curley moved from Tremonton to Gallup, New Mexico, and left no forwarding address in Tremonton. She then moved to Tafagai, New Mexico, for approximately three months. She then returned to Gallup before the trial. She originally had a post office box in Gallup, but changed to a post office box in Mentmore, New Mexico. The record is not clear as to whether Ms. Curley informed Chrysler Dodge of her Gallup address and, if so, of which Gallup address. However, Ms. Curley testified that she did tell Chrysler that her brother-in-law was taking over payments on the truck and assumed he was receiving notices from Chrysler.

If Chrysler Dodge had sent notice to the address on the contract, Ms. Curley would not have received the notice because she left no forwarding address. Ms. Curley never informed Chrysler Dodge of a current address where it could contact her but instead informed the agency that her brother-in-law would be making future payments on the truck. The last payments made before default were received from her brother-in-law's address. The certified mail receipt attached to the notice of sale was returned with a signature purporting to be that of Ms. Curley. Under these circumstances, we cannot say Chrysler Dodge's sending of the notice of sale to her brother-in-law's home was unreasonable.

■ Even if we were to find that Chrysler Dodge's sending of the notice to Ms. Curley's brother-in-law's home was unreasonable, there is no evidence that Ms. Curley was injured by lack of notice. "The purpose of the notice requirement is for the protection of the debtor, by permitting him to bid at the sale, or arrange for interested parties to bid, and to otherwise assure that the sale is conducted in a commercially reasonable manner." *FMA Fin. Corp. v. Pro-Printers*, 590 P.2d 803, 807 (Utah 1987). *See also Pioneer Dodge Center, Inc. v. Glaubensklee*, 649 P.2d 28, 29 (Utah 1982) (Debtor was notified a sale would take place at 11 a.m. and the sale took place one hour earlier. Debtor did not show up for the 11 a.m. sale, so was not prejudiced by the error.). Ms. Curley heard of the repossession of the truck from her brother-in-law one week after the repossession took place. She testified that she did not contact Chrysler Dodge when she heard of the repossession because she had no money. There is simply no evidence that Ms. Curley was injured by not personally receiving written notice of the sale.

### 3. *Advertising and Fair Price*

Finally, Ms. Curley contends Chrysler Dodge did not adequately advertise her truck or solicit bids and thus it did not receive a reasonable price when it sold the truck to Davis Dodge.

■ It is the duty of the secured party to obtain the best possible price for the benefit of the debtor. However, the secured party does not have to use extraordinary means. *Vic Hansen & Sons, Inc. v. Crowley*, 57 Wis.2d 106, 203 N.W.2d 728, 731 (1973). There is no requirement or prohibition that the dealer must sell at wholesale or retail, but only that the se-

cured party obtains the best possible price under the circumstances. 203 N.W.2d at 733. "Of prime importance, are the secured party's attempts to obtain a fair price for the collateral by advertising the collateral or otherwise notifying potential buyers that the collateral is for sale." *Haggis Management, Inc. v. Turtle Management, Inc.*, 745 P.2d 442, 444 (Utah 1985). Public advertising is not mandatory, however. In *Security State Bank v. Broadhead*, 734 P.2d 469 (Utah 1987), the bank did not advertise for sale a repossessed vehicle, but solicited and received three bids on the truck. The court rejected the debtor's claims that the sale was commercially unreasonable. The court stated that commercial reasonableness must be determined on a case-by-case basis according to the circumstances of the sale. *Id.* at 472.[8]

Chrysler Dodge advertised the repossessed truck and showed the truck on its used car lot for two-and-one-half months before soliciting bids on the vehicle from dealers. Three bids other than Chrysler Dodge's were received. Chrysler Dodge attempted to notify Ms. Curley of the imminent sale of the truck and the possibility of a deficiency. Chrysler Dodge then sold the truck to the highest bidder. The selling price was higher than the price Chrysler Dodge had arrived at after using the N.A.D.A. pricing book and other pricing factors.

Based upon the foregoing, we find the sale of Ms. Curley's repossessed truck was commercially reasonable and thus affirm the decision of the trial court.

DAVIDSON and JACKSON, JJ., concur.

---

8. The cases cited by Ms. Curley to support her contention the sale was not commercially reasonable because of insufficient advertising and bid solicitation are distinguishable. In *FMA Fin. Corp. v. Pro–Printers*, 590 P.2d 803 (Utah 1979), the secured party stored the repossessed equipment for six months, did not attempt to notify the debtor, contacted only three dealers— one of whom had no intent of making a serious bid, and the equipment sold for half the amount of an appraisal made only a few months before. In *Pioneer Dodge Center, Inc. v. Glaubensklee*, 649 P.2d 28 (Utah 1982), the dealer put the truck on the lot for only a few days, obtained oral bids from its salesmen, and merely announced the sale over the loudspeaker immediately prior to the sale.