**K. J. SCHARF, dba Western Leasing, Plaintiff and Respondent,**

v.

**BMG CORPORATION, Vernon R. Erickson, Michael R. Erickson, and Bruce V. Erickson, Defendants and Appellants.**

No. 18963.

Supreme Court of Utah.

April 16, 1985.

Rehearing Denied July 7, 1985.

Roy G. Haslam, Salt Lake City, for defendants and appellants.

Bryce E. Roe, Salt Lake City, for plaintiff and respondent.

ZIMMERMAN, Justice:

Defendant Vernon R. Erickson personally guaranteed leases on two pieces of repossessed equipment. He appeals from a deficiency judgment entered against him after the lessor, Kathy Scharf, sold the equipment. Erickson claims that Scharf's sale of the equipment was not "commercially reasonable" and that the notice of sale actually given did not constitute "reasonable notification," all as required by section 70A-9-504(3) of the Code. U.C.A., 1953, § 70A-9-504(3) (1980 ed.). For the reasons set forth below, we affirm.

In the spring of 1979, Scharf, doing business as Western Leasing, leased a $33,000 Summit hydraulic shear and an $18,000 Victor lathe to BMG Corporation. Michael R. and Bruce V. Erickson, the principals of BMG, and their father, Vernon R. Erickson, executed personal guarantees of faithful performance under the lease agreements. In April of 1980, BMG Corporation defaulted on the payments due under both leases, and on September 5, 1980, Scharf repossessed the equipment with the Ericksons' consent. On October 1, 1980, Scharf sold the lathe for $6,000, and approximately a week later, she sold the shear for $19,000. She then brought an action pursuant to section 70A-9-504(2) of the Code, seeking to recover the difference between the balance owing on the leases and the amount realized from the sale of the equipment.

At the October 8, 1982, trial, counsel for Vernon Erickson, the only defendant remaining in the action, argued that the sale of the equipment failed to comply with section 70A-9-504(3) of the Code, which gives a secured party the right to dispose of collateral after default. In pertinent part, that section provides: "Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition includ-ing the method, manner, time, place and terms must be commercially reasonable." U.C.A., 1953, § 70A-9-504(3) (1980 ed.). The same section also describes the notice that must be given to the debtor when collateral is disposed of:

> Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor.

*Id.*

Erickson asserted at trial that the method, manner, and timing of the sale all failed to meet section 70A-9-504(3)'s standard of commercial reasonableness. He also asserted that the notice was technically deficient because it failed to state whether the sale would be public or private and did not specify a date, time, and location for the sale. These inadequacies, according to Erickson, prejudiced him by denying him the opportunity to arrange a sale on more favorable terms.

After hearing the testimony, the trial court entered detailed factual findings supporting its conclusions that the sale was private, that it was conducted in a commercially reasonable manner, that the notification met the statutory standard of reasonableness, that the prices received for the equipment reflected its reasonable market value, and that any deficiencies in notice were not prejudicial to defendant. The trial court entered a deficiency judgment for Scharf in the amount of $54,310.21 and awarded her $3,500 in attorney fees.

■ On appeal, Erickson again argues that the sale was not commercially reasonable and that the notice was inadequate under the statute, attacking both the trial court's factual findings and its legal conclusions. The challenges to the factual findings can be disposed of readily. Erickson makes numerous arguments based on the facts as he presented them to the trial

court, rather than on the facts as found by that court. However, at no point does he even discuss the detailed findings entered by the lower court that contradict his factual assertions. With respect to these matters, we take as our starting point the trial court's findings and not Erickson's recitation of the facts. To mount a successful attack on the trial court's findings of fact, an appellant must marshal all the evidence in support of the trial court's findings and then demonstrate that even viewing it in the light most favorable to the court below, the evidence is insufficient to support the findings. *See, e.g., Charlton v. Hackett,* 11 Utah 2d 389, 390, 360 P.2d 176 (1961); *Hutcheson v. Gleave,* Utah, 632 P.2d 815 (1981); *Kohler v. Garden City,* Utah, 639 P.2d 162, 165 (1981); *Hal Taylor Associates v. UnionAmerica, Inc.,* Utah, 657 P.2d 743 (1982). Erickson has not begun to carry that heavy burden. Nowhere does he marshal the evidence supporting his version of the facts, much less the evidence supporting the trial court's findings. Under these circumstances, we decline to further consider Erickson's attack on the factual findings.

■ We next consider Erickson's claim that the trial court erred in its conclusions of law. The standard of review differs from that applicable to factual findings; we accord conclusions of law no particular deference, but review them for correctness. *See, e.g., Automotive Manufacturers Warehouse, Inc. v. Service Auto Parts, Inc.,* Utah, 596 P.2d 1033, 1036 (1979); *Betenson v. Call Auto & Equipment Sales, Inc.,* Utah, 645 P.2d 684, 686 (1982). Erickson first attacks the trial court's conclusion that, as a matter of law, the sale was commercially reasonable. Section 70A–9–504(3) of the Code requires that a disposition of collateral must be commercially reasonable in every aspect. Erickson claims that section 70A–9–507(2) describes what is necessary to satisfy the standard of commercial reasonableness. It provides:

> The fact that a better price could have been obtained by a sale at a different time or in a different method from that

selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner. If the secured party either ■ sells the collateral in the usual manner in any recognized market therefor or ■ if he sells at the price current in such market at the time of his sale or [3] if he has otherwise sold in conformity with reasonable commercial practices among dealers in the type of property sold he has sold in a commercially reasonable manner.

U.C.A., 1953, § 70A–9–507(2) (1980 ed.). Erickson argues that for a sale to have been commercially reasonable, it must have been handled in one of the three modes set out in the above-quoted section. He then asserts that under the facts as he perceives them, none of these three standards have been met. His argument is without merit. Even if we were to assume that the facts as found by the lower court do not show that the collateral was disposed of in one of the three specified modes, Erickson's argument fails because the three types of disposition set out in section 70A–9–507(2) are examples only; they are not the exclusive method of authorized disposition.

This provision of our Code is identical to its Uniform Commercial Code counterpart. In interpreting provisions of our Code, we often turn to the official comments of the Uniform Commercial Code for guidance. The official comment to the section at issue here disposes of Erickson's argument. "[N]one of the specific methods of disposition set forth in subsection (2) is to be regarded as either required or exclusive, provided only that the disposition made or about to be made by the secured party is commercially reasonable." U.C.C. § 9–507, comment 2 (1981).

■ Since the statutory standard of commercial reasonableness cannot be measured with a bright-line test, whether any particular sale is commercially reasonable is to be determined on a case-by-case basis. That determination depends on whether the circumstances of the sale and the manner and business context in which it occurred

support a conclusion that the sale was conducted in a commercially reasonable manner. In this case, the facts found by the trial court provide ample support for the legal conclusion that the sale was commercially reasonable.

Erickson also contends that the notice of sale provided by Scharf did not comport with the statutory requirements and, therefore, that no deficiency judgment can be had under the provisions of section 70A–9–504(2) of the Code. He relies on several technical deficiencies in the letter that operated as a notice of the sale. The September 8, 1980, letter informed him that the equipment had been repossessed and demanded that he pay the total outstanding indebtedness. It also stated that "[t]he equipment ... will be sold *on September 30, 1980*, unless the amounts due under the lease agreement have been paid." (Emphasis added.) Erickson points out two problems with the letter. First, it did not specify whether the sale was to be public or private. Second, the equipment was not sold on September 30th as announced in the letter; one item was sold on October 1st, and the other was sold on October 9th.

■ The letter was technically deficient in both respects. Section 70A–9–504(3) of the Code provides that reasonable notice should specify whether the sale is to be public or private. Further, if a sale is private, as this one was found to be, reasonable notice must specify "the time *after which*" the sale is to be made. U.C.A., 1953, § 70A–9–504(3) (1980 ed.) (emphasis added). Scharf's notice stated the day *on which* the sale was to occur, while the actual sales occurred one day and nine days, respectively, after the date fixed in the notice.

In addition to relying on the technical deficiencies in the notice to protect him from the deficiency judgment, Erickson claims that he was prejudiced because he could have used the several days that elapsed between the date the sale was to have occurred and the date it actually occurred to find a buyer who would pay a higher price. His notice contention is without merit. In *Pioneer Dodge Center, Inc. v. Glaubensklee*, Utah, 649 P.2d 28 (1982), the debtor received notice that her repossessed truck would be auctioned off at 11:00 a.m. on a specified day; instead, the truck was sold at 10:00 a.m. Because the debtor did not show up at 11:00 a.m., we held that she was not prejudiced by the error. *Id.* at 29. By looking beyond the technicalities of the notice requirement to its essential purpose, *Pioneer Dodge* made it plain that the formal elements of the notice requirement must not be followed to the frustration of its purpose. "The purpose of the notice requirement is for the protection of the debtor, by permitting him to bid at the sale, or arrange for interested parties to bid, and to otherwise assure that the sale is conducted in a commercially reasonable manner." *FMA Financial Corp. v. Pro-Printers*, Utah, 590 P.2d 803, 807 (1979). The notice requirement gives the debtor the opportunity to actively protect his interests.

■ In the present case, the purpose of the notice requirement was adequately satisfied, and Erickson has shown no prejudice from the technical deficiencies. Throughout the period from April of 1980, when the lessees first defaulted, through October, when the sales occurred, Erickson and the other guarantors did nothing to secure purchasers for the equipment or otherwise protect their interests. The findings of the trial court established that Erickson at no time showed any interest in the disposition of the collateral. Scharf took all the initiative in disposing of the equipment. She diligently sought out potential buyers and eventually arranged to sell the shear to Tan-Dem Machinery for the highest bid received—$17,000. On September 30th, well after Erickson had received his written notice, Scharf once again took the initiative, this time telephoning Erickson and informing him of the imminent sale. Erickson approved the bid. The sale to Tan-Dem fell through. About a week later, on October 9th, Scharf sold the shear to another party for $19,000, $2,000 more than Tan-Dem had offered.

Because Erickson made no effort at any time to procure a buyer for either piece of equipment and had approved the sale of the shear on the day set forth in the notice for less than was eventually obtained, we cannot find that he was prejudiced by either the technical defects in the notice or the slight delay in the sale. In fact, since he acquiesced to the lower bid, the delay actually worked* to his advantage by lessening the deficiency by $2,000. Under these circumstances, we conclude that the notice was reasonable.

The deficiency judgment entered by the lower court against Erickson is therefore affirmed. In light of the facts that the leases involved in this matter provided for an award of attorney fees to Scharf in any action necessary to enforce the leases and the trial court awarded them to her in connection with the proceedings below, we remand the case for determination of reasonable fees in connection with this appeal as well. *Management Services Corp. v. Development Associates,* Utah, 617 P.2d 406, 409 (1980).

HALL, C.J., and HOWE and DURHAM, JJ., concur.

STEWART, J., concurs in the result.