Dale and Kathy
DEMETROPOULOS, Plaintiffs,

v.

Fred VREEKEN, et al., Defendants.

Deseret Bank, Garnishee.

B.J. RONE, Plaintiff in Intervention
and Appellant,

v.

Dale and Kathy DEMETROPOULOS,
Defendants in Intervention and
Respondents.

No. 860031-CA.

Court of Appeals of Utah.

May 11, 1988.

George M. McCune, Salt Lake City, for appellant, Rone.

Robert H. Wilde, Murray, for respondent, Demetropoulos Cook & Wilde.

Before ORME, JACKSON and BILLINGS, JJ.

## OPINION

ORME, Judge:

This case involves a dispute over the validity of respondents' prejudgment writ of attachment and the priority of appellant's prejudgment writ of garnishment. Despite the inadequacy of appellant's brief, we reach the merits of his appeal and affirm.

## INADEQUACY OF APPELLANT'S BRIEF

While numerous issues are raised on appeal, appellant's brief has not been of much help to the court in disposing of the case before it.[1] The purpose of a brief is to enlighten the court and elucidate the issues rather than confuse the court and obscure the issues.[2] In this respect, one court has

1. "Inadequate appellate briefs which do not significantly assist the Court in disposing of the case before it have proven to be a significant problem. In order to alleviate this concern, this Rule clearly specifies the required contents and order of each brief." Utah R.App.P. 24 advisory committee note. *See* Note 3, *infra.*

2. "It may be said that a brief is as effective as it is helpful in deciding the question or questions presented. Hence, the crucial importance of properly phrasing or stating the question or issue raised on the appeal cannot be overemphasized. By a proper presentation of pertinent authority, counsel should demonstrate and persuade the court that the answer submitted in the brief is warranted, if not absolutely required, by the governing principles of law." Re, *Effective*

observed that "[i]f the court is not supplied with the proper tools to decide cases, then extremely valuable time, already severely rationed, must be diverted from substantive work" into less productive tasks. *Kushner v. Winterthur Swiss Ins. Co.*, 620 F.2d 404, 407 (3d Cir.1980).

Counsel should be aware that appellate courts are beginning to overcome their trepidation about dismissing appeals and imposing sanctions for failure to comply with these procedures. For example, the court in *Kushner*, while acknowledging the "institutional" and "precedential" impact of its decision, found that counsel's "refusal, failure or unwillingness to master [the court's] procedures" necessarily required dismissal of the appeal and imposition of sanctions for failure to file an appendix in conformity with court rules. *Id.* at 407. More recently, this court chose to disregard an inadequate brief and premised its affirmance, in part, on the failure of the brief to comply with our rules. *Koulis v. Standard Oil Co.*, 746 P.2d 1182, 1185 (Utah Ct.App.1987).

The Rules of the Utah Court of Appeals set forth the general requirements to be observed by litigants bringing appeals in this court. Rule 24(k)[3] requires that all briefs "be concise, presented with accuracy, logically arranged with proper headings, and free from burdensome, irrelevant, immaterial or scandalous matters." While appellant's brief is free from "scandalous matters," it is not concise, logically arranged, or free from burdensome material.

Appellant's brief begins with a laborious, ten-page Statement of Facts. The statement of facts is little more than a catalogue of each pleading and paper generated by the parties or the court, regardless of how inconsequential it might be, and accordingly the statement is burdened with minutia. The statement of facts contains unhelpful citations to the thousand-plus page record, such as "See pleading entitled Pre–Judgment Writ of Garnishment with answers to interrogatories dated April 25, 1983, in the court file" and "See entire court file, + R169." Confusion is engendered in this multiparty case by inconsistent references to the parties—sometimes by their names, sometimes by their designation at trial, and sometimes by their designation on appeal. *See* R.Utah Ct.App. 24(d).

The substance of appellant's first of nine points, mercifully reduced from some twenty identified in his docketing statement, is obscured within the 135 words it takes to make it. Point I, by no means unique among appellant's points, is captioned as follows:

DEMETROPOULOS' PRE–JUDGMENT WRIT OF ATTACHMENT AND PROCEEDINGS THEREON WERE SUBSTANTIVELY INCORRECT AND VOID BECAUSE THE WRIT AND PROCEEDINGS THEREON WERE UNAMENDABLY DEFECTIVE BECAUSE A RETURN AND INVENTORY WAS NOT FILED FOR 7 MONTHS INSTEAD OF WITHIN 20 DAYS AS REQUIRED BY RULE 64C(h), A DETAILED INVENTORY WAS NOT FILED AS REQUIRED BY RULE 64C(h), THE SERV-

---

*Legal Writing and the Appellate Brief,* Case & Comment, July–Aug. 1984, at 9, 18.

**3.** Although our citations are to Rule 24 of the Rules of the Utah Court of Appeals, effective January 13, 1987, that rule does not differ from Rule 24 of the Utah Rules of Appellate Procedure, effective January 1, 1985. While it is true that appellant's brief was filed a few weeks before the Utah Rules of Appellate Procedure went into effect, it is also true that the problems inherent in the transition from the prior rules to the new appellate rules were anticipated. It was intended that "unless there is substantial prejudice in a particular case which results from the application of or compliance with these Rules, the Rules shall govern as of the effective date, all appellate procedure ... including cases presently in process." Utah R.App.P., introductory note of Supreme Court Advisory Committee on the Rules of Appellate Procedure. While the new rules were not effective until January 1985, they were prepared in draft form and circulated among the bar for comment and information well in advance of their effective date.

We acknowledge that under former Utah R.Civ.P. 75(p), which was in effect when appellant's brief was filed, the requirements for briefing were phrased somewhat differently. Nonetheless, even under that rule appellant's brief is deficient.

ING OFFICER FAILED TO ASK FOR A MEMORANDUM OF CREDITS ATTACHED AS REQUIRED BY RULE 64C(h), NO DEFENDANTS WERE SERVED WITH PLEADINGS WITHIN 10 DAYS OF ISSUANCE OF THE PRE-JUDGMENT ATTACHMENT IN A WAY ALLOWED BY RULE 4, AND THE WRIT THEREFORE AUTOMATICALLY DIED A JUDICIAL DEATH AT THE END OF ITS 10-DAY LIFE, AND GARNISHMENT UNDER RULE 64D WAS THE APPROPRIATE WRIT TO ISSUE TO LIEN PROPERTY IN THE HANDS OF THIRD PARTIES RATHER THAN ATTACHMENT UNDER RULE 64C.

When Point I is dissected, it obviously concerns several issues. The argument under Point I is a disjointed presentation of abstract legal doctrines pertaining to garnishment and attachment. Cases are quoted and checklists from legal encyclopedias provided, with scant attention given to the facts of the instant matter and no actual analysis of those facts in light of the legal authorities excerpted. Appellant invites us to draw what he apparently regards as obvious conclusions, ending the argument under Point I with: "In the instant case, the Pre-judgment Writ of Attachment of Respondents can not have survived all of the above defects. The cites to the record made in the Statement of Facts above clearly shows that." Difficulty in following the argument is compounded by the lack of a summary of arguments as required by Rule 24(a)(8).[4]

We concede that not every brief filed is in strict compliance with our rules. Nor is every brief we see, any more than every opinion we write, a masterpiece of legal writing. Ordinarily, however, the briefs do enable us to understand, with varying degrees of effort, what particular errors were allegedly made, where in the record those errors can be found, and why, under applicable authorities, those errors are material ones necessitating reversal or other relief.[5] While appellant's task has no doubt been complicated by the convoluted procedural posture of the case, appellant's brief fails to give us much help in finding the keys to understanding it.[6]

Under Rule 24(k), briefs which are not in compliance with the requirements of our rule or are otherwise inadequate may be disregarded or stricken by the court and attorney fees can be imposed. Sympathetic to the *Kushner* court's view that "[w]e can no longer afford the effort and time to prepare counsels' case and to supply counsels' record deficiencies," 620 F.2d at 407 (quoting *United States v. Somers*, 552 F.2d 108, 115 (3d Cir.1977)), when this time can be "better spent in considering the merits of cases that are presented to us in proper form," 620 F.2d at 407, we have considered dealing with the brief in one of the ways provided in Rule 24(k). While we can be expected to become less timid in this regard over time—and as we recognize that a brief which fails to do its job is, in a sense, its own sanction—we decline to impose Rule 24(k) sanctions in this case and turn to the merits of the appeal.[7]

---

4. Rule 24(a)(8), Rules of the Utah Court of Appeals, requires the brief of appellant to contain "[a] summary of arguments. The summary of arguments, suitably paragraphed, shall be a succinct condensation of the arguments actually made in the body of the brief. It shall not be a mere repetition of the heading under which the argument is arranged."

5. Judge Re has noted in this respect that "it is counsel's responsibility to point out the error and to demonstrate that it was reversible because it affected the substantial rights of the appellant." Re, *Effective Legal Writing and the Appellate Brief*, Case and Comment, July–Aug. 1984, at 9, 18.

6. Our confusion might have been alleviated through oral argument, but no request was made pursuant to R.Utah Ct.App. 29(b) and no argument held. Nor did appellant submit a reply brief which might also have clarified the issues.

7. This approach is not inconsistent with this court's disposition of *Koulis v. Standard Oil Co.*, 746 P.2d 1182 (Utah Ct.App.1987). In *Koulis*, a unanimous panel found appellant's brief inadequate under Rule 24 and therefore determined to "sua sponte disregard Koulis' brief on appeal. We also assume the correctness of the judgment below, and find that Katherine Koulis ... has failed to come forward with any legally cognizable reason to excuse her delayed discovery of

## MERITS OF APPEAL

Appellant has set forth various "facts" in his brief. He has not, however, "marshal[led] all the evidence in support of the trial court's findings and then demonstrate[d] that even viewing it in the light most favorable to the court below, the evidence is insufficient to support the findings." *Scharf v. BMG Corp.*, 700 P.2d 1068, 1070 (Utah 1985). Accordingly, "we take as our starting point the trial court's findings [8] and not [appellant's] recitation of the facts." *Id.*

Respondents Dale and Kathy Demotropolous filed their action against various defendants and obtained a prejudgment writ of attachment. The same was served on Deseret Bank on April 12, 1983, as Deseret Bank held certain accounts in the names of some of the defendants. Appellant B.J. Rone, a creditor of some or all of these same defendants, then filed his own civil action and obtained a prejudgment writ of garnishment. He served the bank eleven days later. Before respondents' writ expired, it was extended twice, the second time indefinitely, "pending a request by the Defendants to have the matter heard." Respondents obtained judgment by default against defendants and, in execution of the judgment, promptly served the bank with a post-judgment writ of garnishment. Appellant obtained a default judgment in the action he filed a few weeks later.

Appellant intervened in the action respondents filed to assert his entitlement to the accounts.[9] Intervention was denied by the district court, but was subsequently permitted pursuant to a writ of mandamus issued by the Utah Supreme Court. Appellant's initial foray into the action was subsequently nullified because of his failure to comply with Utah R.Civ.P. 24(c) following issuance of the writ of mandamus. Various papers filed by him were stricken by court order because he had not first filed a complaint in intervention and paid the necessary filing fee. These oversights were ultimately corrected. The ancillary proceeding which was begun with appellant's complaint in intervention ultimately culminated in a judgment dismissing that complaint. It is from that judgment that appellant Rone appeals.

■ Appellant claims priority to the accounts in question due to various alleged deficiencies in connection with respondents' prejudgment writ of attachment. Respondents strive to demonstrate that their prejudgment writ was proper in every material respect, but also attack the validity of appellant's prejudgment writ of garnishment and his default judgment. Their basic position is that even if their prejudgment writ was flawed, appellant's has come to have no force or effect, leaving respondents' post-judgment writ of garnishment the first, clearly valid levy on the accounts held by Deseret Bank.

The trial court's findings support the conclusion that appellant's prejudgment writ of garnishment does not have precedence over respondents' post-judgment writ of garnishment, making it unnecessary for us to decide whether respondents' prejudgment writ of attachment was valid.

Appellant purported to serve the defendants he named in his action, including the

---

the alleged fraud." *Id.* at 1185. Nonetheless, the panel was apparently not comfortable in premising its affirmance solely on that ground and went on to conclude that affirmance was also warranted on statute of limitation grounds. *Id.* at 1185–86.

8. We do so only insofar as the findings of fact, found both in the court's memorandum decision and its formal "Findings of Fact," are really that. Some of the "facts" set forth in the findings, prepared by respondents' counsel, are actually conclusions of law or else so broadly phrased as to be unhelpful. Finding # 3, for example, reads as follows: "That the Plaintiffs' Prejudgment Writ of Attachment was substan-

tively and procedurally proper and correct in all relevant respects."

9. Appellant and respondents were victims of the same investment scam. It is regrettable that, having both succeeded in finding a liquid asset of defendants at about the same time, they were unable to devise an equitable method of sharing the prize rather than engaging in a costly, "winner-take-all" contest. Astoundingly, in view of the modest size of the garnished accounts and amounts invested, their procedural battles generated some seven hundred pages in court filings.

defendants whose accounts were garnished, by service upon one Keith Vreeken, who was not himself named as a defendant.[10] However, the court noted in its memorandum decision that "[n]o proof exists in the record other than the constable's guess that Keith Vreeken was the agent of or had any managerial control for the business entities" whose accounts were seized. The court formally found that Keith Vreeken was not "an officer, managing agent, general agent or any other agent authorized to receive service for any relevant Defendant herein nor that he was a clerk, cashier, chief clerk [or] person having the management, direction or control of any property of any such Defendant." There is adequate support in the record for this finding. The defendants in question were found to be "sole proprietorships," not corporations, and no assumed name certificates or filings of any sort had been made concerning them. Thus, no public record showed that Keith Vreeken was registered agent for them or otherwise affiliated with them. The bank's representative testified that Keith Vreeken was not on the signature cards for the accounts, although others with that same last name apparently were.[11]

Appellant disputes the finding concerning Keith Vreeken's status, but also contends that any problems with his service of process on the defendants are inconsequential since service of his prejudgment writ of garnishment was duly made on the bank. This fact does not save appellant. A prejudgment writ of garnishment is a provisional remedy only, "available as a means of attachment of intangible property ... before judgment, in cases in which a writ of attachment is available under Rule 64C." Utah R.Civ.P. 64D(a)(i). Such a prejudgment writ merely commands the garnishee to retain the property "until further order of the court." Utah R.Civ.P. 64D(e)(i). Only if the plaintiff ultimately obtains a valid judgment against the defendant is he or she entitled to some or all of the provisionally garnished property.[12] *See* Utah R.Civ.P. 64D(j). *See also* Utah R.Civ.P. 64C(k).

In this case, the court properly concluded that the default judgment obtained by appellant in the action he filed was invalid for lack of jurisdiction due to the insufficiency of service of process on the defendants in that action. The provisional remedy of a prejudgment writ of garnishment in that same action ceased to have any further effect upon entry of that "judgment"[13] and could be properly disregarded by the court in determining who was entitled to the accounts, leaving respondents entitled to the accounts pursuant to their post-judgment writ of garnishment.

One further point raised by appellant merits comment. Appellant contends that the court erred in not granting his post-trial motion to amend the return of service on Keith Vreeken. It is suggested that if the return were amended, it would demonstrate that service on the defendants was actually proper, meaning appellant's judgment was valid and his prejudgment writ entitled to recognition. We are not per-

---

10. Appellant named as defendants Kurt Vreeken, an individual, doing business under various assumed names; Fred Vreeken, an individual, doing business under those same names; "business entities" corresponding to Kurt and Fred Vreeken's assumed names; John Andrews, Rick Ramsey and Jerry Pitts, under various assumed names; Financial Development Group, a business entity; and "several John Does, whose names are not yet known." The Deseret Bank accounts stood in the names under which Kurt and Fred Vreeken allegedly did business.

11. It is worth noting that one of them, Kurt Vreeken, had been served by the constable used by appellant on at least one prior occasion.

12. "[G]arnishment to enforce a final judgment should be distinguished from the provisional remedy of garnishment before trial, which is aimed at preserving assets of the debtor until a final decision can be had on the merits." D. Dobbs, *Remedies* 11 (1973).

13. As provided in Rule 64A, appellant's prejudgment writ of garnishment recited that it would expire in ten days from issuance unless extended. Utah R.Civ.P. 64A(3). Defendants did not appear at the hearing on whether the writ should be continued and, accordingly, by order entered at that hearing, the writ was continued "in full force and effect during the pendency [of appellant's action] or until further order of the court."

suaded. Any error in disallowing the amendment was harmless since the constable testified at length concerning the circumstances of service on Keith Vreeken. Accordingly, all relevant information was before the court anyway. Moreover, we find it difficult to see how appellant can complain in this appeal about a ruling on a motion that would have been properly raised, if at all, in another action, namely the one he brought and in which the return was filed.

The judgment appealed from is affirmed.

BILLINGS, J., concurs.

JACKSON, Judge (concurring):

By virtue of random case assignment, the burden of trying to make sense of the appellants' briefs in this case and in *Koulis v. Standard Oil Co.*, 746 P.2d 1182 (Utah App.1987), was cast upon me. No other judge of this court was honored with that dubious distinction. And I admit the likely existence of a cumulative effect upon me. In both cases, we have proceeded to decide the merits of the issues raised, in deference only to the parties and not to appellants' counsel. Charles Dickens said that one member of Parliament had a tolerable command of sentences with no meaning in them. Appellate counsel must prepare and submit briefs that are more than mere sound effects. The time will most assuredly arrive when a panel of this court will be constrained to disregard intolerable and unacceptable briefs and not reach the merits of the case.