**COMMERCE FINANCIAL,**
**Cross–Claimant and**
**Appellant,**

**v.**

**MARKWEST CORPORATION, et al.,**
**Cross–Claim Defendants and**
**Appellees.**

**COMMERCE FINANCIAL, a Utah**
**corporation, Third–Party Plaintiff**
**and Appellant,**

**v.**

**Howard H. HUCKS and Daniel B.**
**Hucks, Third–Party Defendants**
**and Appellees.**

**W. Kent BROWN, David B. Gardner,**
**Glade Southam and Nolan J.**
**Olsen, Plaintiffs,**

**v.**

**Melvin Keith BURNINGHAM, et**
**al., Defendants.**

**No. 890501–CA.**

Court of Appeals of Utah.

Aug. 31, 1990.

Rehearing Denied Nov. 9, 1991.

Peter C. Collins (argued), Winder & Haslam, Salt Lake City, for appellant.

B. Ray Zoll and H. Michael Drake, Zoll & Branch, Salt Lake City, and Garry B. Wilmore (argued), Bountiful, for appellees.

Before BENCH and JACKSON, JJ., and ROBERT L. NEWEY[1], Senior Juvenile Court Judge.

---

1. Robert L. Newey, Senior Juvenile Court Judge, sitting by special appointment pursuant to Utah Code Ann. § 78–3–24(10) (Supp.1990).

## OPINION

JACKSON, Judge:

Commerce Financial appeals from a judgment denying recovery of principal and interest on three promissory notes: (1) a note in the amount of $18,241.70 signed by Markwest Corporation and Howard Hucks, individually, dated October 17, 1985; (2) a note in the amount of $258,000 signed by Markwest Corporation and Howard Hucks, individually, dated October 30, 1985; and (3) a note in the amount of $20,000 signed by Howard Hucks and Daniel Hucks, both individually, dated February 13, 1986. We reverse.

## FACTUAL BACKGROUND

Commerce Financial (C.F.) agreed to loan $196,000 to Markwest Corporation (Markwest) and Howard Hucks (Howard) on May 30, 1985. Markwest and Howard bought into a land development project initiated by B & A Properties and financed by C.F. A memo in the record states the purpose of the loan:

| | | |
|---|---|---|
| $ 50,000 | Land payment to sellers [The Brown group, plaintiffs in this action] | |
| $115,000 | Install sewer line | |
| $ 16,800 | Impounded interest | |
| $ 5,880 | Loan fees C.F. | |
| $ 3,000 | Loan fees Builders Financial | |
| $ 5,000 | B & A Properties | |
| $ 320 | Closing cost | |
| $196,000 | Total | |

The memo also states the source of repayment: "Hucks and Markwest are going to develop the property into an industrial park and assist B & A Properties to develop the contiguous 3 acres into self storage units. Hucks has ability to obtain construction loans for the project."

The loan was secured with subordinate interests by a trust deed and contract assignment. A $196,000 promissory note signed by Markwest and Howard provided for monthly interest payments and payment in full on January 1, 1986, or on demand. Disbursements by C.F. from this loan totaled $85,394.02 by October 30, 1985.

In the meantime, on October 17, 1985, Markwest and Howard borrowed $18,-241.70 from C.F. to apply on a payment due B & A Properties. Markwest and Howard executed a promissory note for that amount and a trust deed to secure payment. The security was a condominium, Unit No. 1014, of Canyon Road Towers. All the loan proceeds were disbursed on the account of B & A Properties. The note was payable on demand on April 15, 1986.

On October 30, 1985, the parties rolled the $85,394.02 disbursed from the May 1985 note into a new loan in the amount of $258,000. Security for payment of the October 30 note remained the same as for the May note, i.e., subordinate interests by way of a trust deed and contract assignment. The new note was payable in full on January 1, 1986, the same due date as the former note, and called for monthly interest payments. The new note was also payable on demand.

The next day, the parties also executed an "Escrow Agreement For Completion of Subdivision Requirements" representing to Draper City that $162,819.20 of the loan was on deposit with C.F., as escrow agent, to guarantee the installation of improvements to be required by Draper City. Markwest and Howard agreed to complete satisfactorily installation of the improvements, and C.F. agreed to release periodic construction payments when authorized by Draper City as construction progressed. Disbursements at closing were limited to loan closing expenses.

Markwest and Howard failed to make their $50,000 land payment to the Brown group which fell due on January 23, 1986, and foreclosure of the Brown group's first trust deed was begun. In addition, some mechanics and materialmen were demanding payment. On February 11, 1986, a

"bond" release request for $9,000 was initiated with Draper City to pay the claims of Ecker Equipment and Amcor.

On February 13, 1986, the final loan transaction between the present parties occurred. Howard Hucks and Daniel Hucks, as individuals, executed a $20,000 unsecured note payable to C.F. on demand or on March 17, 1986. The Huckses utilized these loan proceeds as follows: (1) $14,500 was applied on obligations of Markwest to C.F., including $1,992.51 interest and $316.46 principal on the October 30, 1985, note that was past due on January 1, 1986; and (2) $5,500 to the Brown group to avoid foreclosure and extend the due date of the $50,000 payment to May 1, 1986. The record reveals an extension agreement dated February 12, 1986 between the Brown group and Markwest and Howard. The $5,500 was sole consideration for the extension of the $50,000 past due payment, and did not apply to principal or interest due the Brown group. A similar $3,000 extension payment was required on or before May 1, together with the $50,000 January payment. The agreement was signed "B & A Properties, Inc. by Daniel B. Hucks, Markwest Corp."

On February 20, the Draper City Council approved $8,500 of the requested "bond" release. (The approval form indicates prior approvals for $2,500). On February 21, 1986, C.F. disbursed a total of $11,000—$8,136 to Ecker Equipment and $2,764 to Amcor—from the October 30, 1985, loan to avoid foreclosure of their liens upon the property.

Thereafter, the $20,000 note fell due on March 17, 1986, and the $18,241.70 note fell due on April 15, 1986. On May 13, 1986, C.F. made its first written demand for loan payment. On May 27, the Brown group sued to foreclose its first security position and to eliminate the interests of C.F., Markwest and the Huckses, and holders of mechanics' liens. The judgment in the Brown group foreclosure action eliminated C.F.'s security for the October 30, 1985, loan. That judgment left C.F. and appellees Markwest and the Hucks brothers to pursue their respective cross-claims against each other.

C.F.'s cross-claim was a suit to collect amounts due on the three promissory notes: (1) the October 17 note (foreclosure on the condo given as security was also sought); (2) the October 30 note, now rendered unsecured by the prior foreclosure; and (3) the unsecured February 13 note. Appellees' cross-claim against C.F. sought damages "for all loss sustained as a result of Commerce Financial's failure to fund the loan," i.e., for breach of the October 30 loan agreement.

The trial court concluded that "C.F. should not be permitted return of the money it paid" out under the loan agreement because it "was not entitled to stop disbursement of funds under the construction loan and escrow agreement," referring to the October 30, 1985 loan transaction. The trial court further concluded that appellees should not recover damages because they failed to seek alternate funding for the project "and failed to complete the project," and because their damages were of "speculative nature." The court designated the above as "mutual default of the parties" and dismissed both cross-claims. C.F. has appealed the ruling on its cross-claim. Appellees have not appealed the ruling on their cross-claim.

On appeal, C.F. does not challenge the evidence or the trial court's findings of fact. C.F. challenges the trial court's conclusion of law, based on the findings as made, that C.F. cannot recover money disbursed to appellees Markwest and the Hucks brothers because C.F. had breached a contractual agreement to advance further amounts to them. We accord conclusions of law no particular deference but review them for correctness. *Scharf v. BMG Corp.*, 700 P.2d 1068, 1070 (Utah 1985). The appellate court is free to reappraise the trial court's legal conclusions. *Berube v. Fashion Centre, Ltd.*, 771 P.2d 1033, 1039 (Utah 1989).

## ANALYSIS

Markwest and Howard elected to affirm the loan agreement and cross-claim for

damages based on breach of contract, rather than seek rescission.[2] The trial court determined that C.F. breached the loan agreement of October 1985 by its subsequent refusal to disburse further advances or draws on the loan. We will assume, *arguendo,* that this determination was correct. C.F. challenges the court's other conclusion, namely, that C.F. cannot recover on its cross-claim the amounts claimed and due under the promissory notes because of its own breach of the loan agreement. C.F. argues that *Utah Farm Prod. Credit Ass'n v. Cox,* 627 P.2d 62 (Utah 1981), which appellees failed to address in their brief, is controlling and requires a different conclusion of law. We agree.

In *Cox,* the Utah Farm Production Credit Association ("the Association") had loaned Cox over $168,000 on a longstanding line of credit to operate his business. In 1976, Cox resolved to discontinue his business and apply the proceeds toward his debt. However, an association loan officer encouraged him to remain in business and agreed to extend the loan another year and provide additional financing. Cox relied on this commitment and undertook to continue his business operation. Later, the Association refused to loan the additional funds as agreed, and it sued to collect the outstanding debt and foreclose. Cox counterclaimed, seeking damages for breach of contract to make the agreed-upon loan.[3] The trial court awarded the Association the amounts due under the promissory note, but determined that Cox had been damaged by the Association's breach of the loan agreement and accordingly allowed an offset.

■ On appeal, the offset was disallowed. Our supreme court noted that two general principles need to be applied before an aggrieved borrower can recover damages for breach of an agreement to lend money. First, breach of contract entitles the aggrieved party to those damages which will place that party in as good a position as if the other party had performed pursuant to the contract. *Id.* at 64 (citing *Keller v. Deseret Mortuary Co.,* 23 Utah 2d 1, 455 P.2d 197 (1969)). Second, as a corollary to the first principle, the aggrieved party "may not, either by action or inaction, aggravate the injury occasioned by the breach, but has a duty actively to mitigate his damages." *Id.* Applying these principles in the context of a lender's breach of a contract to loan money, the court concluded that a would-be borrower in such a situation must actively seek alternate financing. Only if this search fails may the would-be borrower seek special damages, including lost profits, to compensate for the breach. *Id.* at 65.

■ Here, the trial court entered the following findings: (1) that Markwest and Howard knew by the end of February 1986 that C.F. would disburse no more funds; (2) that they did not seek alternate financing; (3) that prices for the development would be too speculative to support a finding of any legally cognizable damages suffered by them due to C.F.'s breach. These findings do not support the trial court's conclusion of law that "Commerce Financial should not be permitted a return of money it loaned" to appellees. Instead, the findings support two different conclusions of law: (1) appellees were not entitled to recover damages for the breach by C.F.; and (2) even if they were entitled to recover damages, there were none, so they are not entitled to any damages or offset. We hold that C.F. is entitled to recover principal loaned and interest accrued thereon, as provided in each of the three notes, from the respective note makers. Furthermore, C.F. is entitled to foreclose on the condominium given as security for the note of October 17, 1985. Thus, we remand for entry of judgment for principal and interest due on each note according to C.F.'s

---

**2.** If appellees had sought and obtained rescission of the loan agreement based on C.F.'s breach, the court would have restored the status quo by requiring return of the funds that C.F. had actually advanced under the agreement. *See Brandtjen & Kluge, Inc. v. Shonka,* 2 Utah 2d 223, 272 P.2d 155, 156 (1954); Restatement (Second) of Contracts § 374(1) (1981).

**3.** The posture of the competing cross-claims in this case is comparable to the competing complaint and counterclaim in *Cox.*

undisputed testimony and documentary evidence already in the record.

## ATTORNEY FEES

In its brief, C.F. barely raises a challenge to the trial court's conclusion of law that each party "should assume his own attorneys fees." C.F. mentions attorney fees twice in its main brief and not at all in its reply brief. C.F.'s statement of the relief sought on appeal includes "reasonable attorney's fees (to be fixed by the District Court), the imposition of which is provided by the language of the three notes." In its summary of argument, C.F. claims that it is entitled to the relief it has sought and continues to seek in this litigation, including reasonable attorney fees. C.F. has not provided us with any further argument or analysis concerning the attorney fee issue. Perhaps C.F. has assumed that an award of attorneys fees automatically follows a recovery of principal and interest on the notes. Although attorney fees are recoverable if provided for by the parties' contract, *Dixie State Bank v. Bracken*, 764 P.2d 985, 988 (Utah 1988); *Elder v. Triax Co.*, 740 P.2d 1320 (Utah 1987) (promissory note), a party seeking attorney fees must support its claim in the trial court with evidence of their amount and reasonableness. *Jenkins v. Bailey*, 676 P.2d 391, 393 (Utah 1984); *Paul Mueller Co. v. Cache Valley Dairy Ass'n*, 657 P.2d 1279, 1287–1288 (Utah 1982); *Barnes v. Wood*, 750 P.2d 1226, 1233 (Utah Ct.App.1988); *see Ringwood v. Foreign Auto Works, Inc.*, 786 P.2d 1350, 1360–61 (Utah Ct.App.), *cert. denied*, 135 Utah Adv.Rep. 38 (1990).

■ In this case, C.F. did not offer any evidence at trial on the amount of fees it had incurred. C.F. left the trial court with-

out the means to exercise its discretion in determining either the amount or the reasonableness of its attorney fees. Since C.F. failed completely in its attorney fee proof, we conclude that, on the evidence presented, the trial court did not err in denying attorney fees to C.F.[4] *See Cox*, 627 P.2d at 66. C.F.'s brief did not raise the issue of attorney fees incurred on appeal; thus, we decline to consider it.

The judgment of the trial court is reversed, and the case is remanded for entry of judgment consistent with this opinion.

BENCH, J., and ROBERT L. NEWEY, Senior Juvenile Court Judge, concur.

---

4. Moreover, even if there was evidence of the total fees incurred, C.F. did not supply the trial court with any evidentiary basis on which to determine the amount of compensable fees attributable to *prosecution* of its three-count cross-claim on the notes which provide the contractual basis for recovery of attorney fees. Since we are aware of no contractual basis for any recovery by C.F. of attorney fees incurred in its unsuccessful *defense* of the cross-claim for breach of the loan agreement, this failure by C.F. to apportion its fees would alone be suffi-

cient basis for the trial court's denial of C.F.'s request for attorney fees. *See Cox*, 627 P.2d at 66. Furthermore, a basis for apportioning attorney fees incurred for prosecuting each note would apparently be necessary in this case because the makers of the notes were not the same and the time spent to recover on each would vary because one note was always unsecured, one was secured but became unsecured during litigation, and one was always secured and foreclosure was sought.