HEBER CITY CORPORATION, a municipal corporation, Plaintiff and Appellee,

v.

Lowell R. SIMPSON and Sandra S. Simpson, husband and wife, and Jay Simpson and Glenna R. Simpson, husband and wife, Defendants and Appellants.

No. 960029.

Supreme Court of Utah.

June 17, 1997.

Harold A. Hintze, Salt Lake City, for plaintiff.

Brant H. Wall, Salt Lake City, for defendants.

ZIMMERMAN, Chief Justice:

Lowell R. Simpson, Sandra S. Simpson, Jay Simpson, and Glenna R. Simpson ("the Simpsons") appeal a decision of the district court finding that a road adjacent to their property and historically used to access the airport servicing Heber City (the "Airport Road") was not a "public highway" as defined by section 27–12–89 of the Utah Code and

was therefore properly closed by Heber City. We have jurisdiction to hear this case under section 78–2–2(3)(j) of the Utah Code. We reverse and remand.

This controversy arose out of Heber City's decision in 1992 to extend the length of its municipal airport's runway and expand the airport's protection zone.[1] To effect this expansion, Heber City sought to acquire by condemnation a portion of the Simpsons' property.[2] During the condemnation proceeding, the public nature of the Airport Road became an issue because the Simpsons contested the adequacy of the compensation offered by Heber City. Specifically, they asserted that the valuation of the condemned property interests should take into account the fact that the property had direct access to Highway 189 via the Airport Road.[3] The Simpsons argued that a purchaser of the condemned portion of their property would have paid a premium for its access to Highway 189 via a public highway. The Airport Road connected the airport to Highway 189 and ran exclusively over property owned by Heber City. Heber City, however, had previously acted unilaterally to close the Airport Road.[4] The road had to be closed to satisfy the requirements of the protection zone. The Airport Road had also connected the Simpsons' condemned property to Highway 189. The Simpsons were not, however, landlocked by the closure because their remaining property accessed Highway 189 via Daniels Canyon Road, which is a public highway.

---

1. The history of the creation of the airport is also relevant to this case. In 1947, Heber City and Wasatch County jointly acquired property for construction of the Heber Airport. The Simpsons and several other property owners in the area sold their property to be used for the airport. All but one of the deeds from these property owners expressly conveyed away the right to access their remaining property from the airport to be built on the property conveyed by them. The one property owner who did not convey away his rights-of-way across the airport facility was Mr. Howe. His property was landlocked by the airport, and therefore, he was expressly granted a right-of-way across the airport from his property to Highway 189.

2. Heber City acquired fee title to a portion of the Simpsons' property and an aviation easement over an additional portion of the Simpsons' property.

3. For ease of reference, we have appended a map of the Airport Road.

4. Heber City asserts that it closed the Airport Road at the insistence of the Federal Aeronautics Administration, which had determined that there was a risk that planes taking off or landing would collide with vehicles or pedestrians on the road. Heber City first closed the Airport Road in December 1988. However, Wasatch County objected to the road closure. Heber City and the County eventually worked out a compromise in which Heber City agreed to build a new road to provide access for properties landlocked by the closure of the Airport Road. The road was closed again in 1989 and has remained closed since that time.

Heber City disputed whether the Airport Road was a public highway within the definition of section 27–12–89 of the Code, which requires continuous use as a public thoroughfare for a period of ten years. In effect, the City argued that it could close the road without compensating for the loss of direct access it provided because it was a private road owned by the City and running over City property.

The parties agreed that this critical point of contention needed to be resolved before the issue of just compensation could be determined. Therefore, they stipulated that the trial could be bifurcated, separating the issue of whether the Airport Road was a public highway from the compensation portion of the condemnation proceedings. The district court entered an order bifurcating these issues.

During the trial concerning the "public" status of the Airport Road, the Simpsons presented numerous witnesses who testified that they had used the Airport Road for a variety of reasons other than for accessing the airport. These included attending shooting events at a gun club on property adjacent to the road, using it as a kind of "lover's lane," accessing businesses located along the road, riding horses, picnicking, and watching airplanes take off and land. The witnesses testified that the public used the road for these purposes from the opening of the road in 1947 until its closure in 1989.

In addition, the Simpsons presented the testimony of Robert Mathis, who had been the Wasatch County Planner from 1976 through the time of the trial. Mr. Mathis testified that when he became the Wasatch County Planner, the Airport Road was designated on the county maps as a class B road. This designation means that the road is a public road entitled to state funds for maintenance and construction. *See* Utah Code Ann. § 27–12–22 (defining class B roads); *id.* § 27–12–127 (creating fund for class B and C roads); Utah Admin. Code R926–3–4(1) (establishing permissible uses of class B and C funds). According to Mr. Mathis, Wasatch

County received money from the state for maintaining this road from sometime prior to 1976 through the time the Airport Road was closed in 1989. Mr. Mathis also testified that the County and Heber City disagreed as to whether formal proceedings to vacate the road were necessary before the road could be closed, with Heber City taking the position that no such proceedings were required. *See* Utah Code Ann. § 27–12–90 (providing procedure for vacating public road).

Following the conclusion of the trial on the public highway issue, the district court issued a memorandum decision finding that the Airport Road was not a public highway as defined by section 27–12–89 of the Code. In its memorandum decision, the district court stated:

> The Court acknowledges that this is a close decision. There is evidence of public use of the airport roadway over an extended period of time. However, in the interest of fairness and justice, it would appear this was simply the type of roadway that should be exempted from the technical provisions of U.C.A. § 27–12–89.

Thereafter, the court entered an order denying the Simpsons the right to claim compensation for the Airport Road access to Highway 189.[5] The Simpsons moved for a new trial, but the district court denied this motion. The parties stipulated that the court's order constituted a final judgment under rule 54(b) of the Utah Rules of Civil Procedure, and the district court entered an order to that effect. The Simpsons appealed to this court.

We first state the appropriate standard of review. Here, the district court examined section 27–12–89, made the requisite findings of fact, and determined that the facts found by it did not meet the statutory definition of a public highway. We review this ultimate determination, which is a mixed question of fact and law, for correctness. *See State v. Pena,* 869 P.2d 932, 936 (Utah 1994). Historically, we have given trial courts a fair degree of latitude in determin-

---

5. Although both parties submitted proposed findings of fact and conclusions of law, the trial court did not adopt either. We therefore treat

the trial court's memorandum decision as its findings and conclusions supporting its order.

ing the legal consequences under section 27–12–89 of facts found by the court. *See, e.g., Bonner v. Sudbury,* 18 Utah 2d 140, 417 P.2d 646, 648–49 (1966) (upholding conclusion that street had been dedicated to public use); *Thompson v. Nelson,* 2 Utah 2d 340, 273 P.2d 720, 723 (1954) (upholding conclusion that road was not public highway). Under section 27–12–89, a road is deemed "dedicated and abandoned" to the public if it "has been continuously used as a public thoroughfare for a period of ten years." Granting discretion to the trial court is appropriate under that section, as its legal requirements, other than the ten-year requirement, are highly fact dependent and somewhat amorphous. *See Pena,* 869 P.2d at 938, 940. The issues presented under section 27–12–89, therefore, do not lend themselves well to close review by this court, as we would be hard-pressed to establish a coherent and consistent statement of the law on a fact-intensive, case-by-case review of trial court rulings. *See id.* Therefore, when reviewing a trial court's decision regarding whether a public highway has been established under section 27–12–89, we review the decision for correctness but grant the court significant discretion in its application of the facts to the statute. Finally, we "require[ ] proof of dedication by clear and convincing evidence." *Draper City v. Estate of Bernardo,* 888 P.2d 1097, 1099 (Utah 1995) (citing *Thomson v. Condas,* 27 Utah 2d 129, 493 P.2d 639, 639 (1972)).

█ The Simpsons argue that the Airport Road was a public highway by virtue of section 27–12–89 of the Utah Code. That section provides, "A highway shall be deemed to have been dedicated and abandoned to the use of the public when it has been continuously used as a public thoroughfare for a period of ten years." Utah Code Ann. § 27–12–89. Thus, for a road to become a public highway by dedication under section 27–12–

89, there must be (i) continuous use, (ii) as a public thoroughfare, (iii) for a period of ten years. To prevail on this appeal, the Simpsons must show that the district court could not correctly conclude that they failed to establish one or more of these three elements.[6]

We begin our analysis under section 27–12–89 with the continuous use requirement. The witnesses presented at trial testified to using or observing others using the Airport Road frequently and without interruption from just after the road's construction in 1947 until its closure in 1989. For example, Ray Lloyd, a local resident who had lived in the vicinity of the Airport Road for over fifty years, testified that he drove on the Airport Road to attend shooting events at a gun club from 1948 to 1955. During that time, no one ever challenged his right to drive on the road.[7] He further testified to observing other people use the road over an extended period of time for various purposes including riding horses, hauling hay, and necking.

Other witnesses testified to significant commercial traffic on the Airport Road to various businesses located along the road. The testimony of Jay Simpson reveals substantial traffic on the Airport Road to a junkyard. He testified as follows:

> Q  Did you ever see or observe a junk yard or a used car type business or area?
>
> A  Oh yes.
>
> Q  Where was that located in reference to the road that we are talking about?
>
> A  That was off from the oil, south of the oil south of Lloyd Brothers Garage or their yard. Approximately, 300 feet and they probably had 3 or 4 acres of ground that they had junk cars on. Everybody went down there for a part, it seemed like.

---

**6.** Though each of the three elements under section 27–12–89 for the establishment of a public highway embodies a logically distinct requirement that must be satisfied, the elements are so intertwined that they are not readily susceptible to separate discussion. For example, it is difficult to analyze whether the "use" has been continuous without determining at the same time whether that "use" has been as a public thoroughfare. Recognizing this difficulty, we ac-

knowledge that our attempt to give separate treatment for each of the three elements will necessarily involve some overlap between our discussions of the individual elements under section 27–12–89.

**7.** Mr. Lloyd testified that when the airport became operational in 1955, the gun club was required to relocate.

**Q** And over what period of, or how many years would you say you have observed this type of use of the road that you have described?

**A** Early years there wasn't that many, back in the 40's and 50's there wasn't quite that many. But the late 50's, 60's it just kept getting more and more and more use.

**Q** Did that use continue in the fashion you have indicated up to the time it was closed?

**A** Yes, it did.

George Webb also testified that customers drove on the Airport Road to his shop for his livestock transportation business.

None of the witnesses testified to any interruption of the public's use of the road, other than its temporary closure in 1988 and final closure in 1989. Indeed, Mr. Mathis, the Wasatch County Planner, testified that the County considered the Airport Road, which was in the unincorporated portion of the county, to be a public road.[8] Thus, the County certainly was not likely to restrict the public's use of the road. The uncontradicted evidence demonstrates that the public "made a continuous and uninterrupted use of" the Airport Road "as often as they found it convenient or necessary." [9] *See Boyer v. Clark,* 7 Utah 2d 395, 326 P.2d 107, 109 (1958). We conclude that this evidence establishes as a matter of law that the Airport Road was used continuously for purposes other than reaching the airport. *See Draper City,* 888 P.2d at 1101 (emphasizing importance of preventing general public use of road to avoid statutory dedication).

We now consider whether this "continuous use" was "use as a public thoroughfare." Perhaps our most detailed definition of "pub-lic thoroughfare" was announced in *Morris v. Blunt,* 49 Utah 243, 161 P. 1127, 1131 (1916), where we stated:

A "thoroughfare" is a place or way through which there is passing or travel. It becomes a "public thoroughfare" when the public have a general right of passage. Under [the identically worded predecessor statute to section 27-12-89,] the highway, even though it be over privately owned ground, will be deemed dedicated or abandoned to the public use when the public has continuously used it as a thoroughfare for a period of 10 years, but such use must be by the public. Use under private right is not sufficient. If the thoroughfare is laid out or used as a private way, its use, however long, as a private way, does not make it a public way; and the mere fact that the public also make use of it, without objection from the owner of the land, will not make it a public way. Before it becomes public in character the owner of the land must consent to the change.

*See also Thompson,* 273 P.2d at 723 (quoting same passage with approval). This definition establishes four general requirements: (i) There must be "passing or travel," (ii) the "use must be by the public," (iii) use by permission does not constitute use as a public thoroughfare, and (iv) "[b]efore [the road] becomes public in character the owner of the land must consent to the change." We have subsequently abandoned interpreting into the language of the statute the requirement that the owner must consent to the dedication. *Draper City,* 888 P.2d at 1099 (citing *Leo M. Bertagnole, Inc. v. Pine Meadow Ranches,* 639 P.2d 211, 213 (Utah 1981); *Thurman v. Byram,* 626 P.2d 447, 449 (Utah 1981)). We have, however, maintained the permissive

---

8. Though the County classified the Airport Road as a class B road, this fact alone does not compel the conclusion that the road was a public highway under section 27-12-89. *See Bonner,* 417 P.2d at 648 ("[T]he fact that [the road in question] was shown on the public records to be a public street" "will not necessarily establish it as a public way[.]"). In this case, Mr. Mathis admitted that he merely accepted the Airport Road's designation as a class B road from his predecessor. Therefore, we do not know why it was initially classified as a class B road.

9. The only evidence suggesting any limitation of the public's use was that the gun club moved to a new location after the airport became operational. This fact alone, however, is insufficient to justify the conclusion that the road was not continuously used. No other evidence suggested that any other public use of the road was limited. Furthermore, the fact that the gun club was required to move indicates that it was the shooting activities of the gun club in the immediate vicinity of the airport, not the public's use of the road, that prompted airport officials to relocate the club.

use element. *See, e.g., Thurman,* 626 P.2d at 449. Regarding the class of individuals who constitute "the public," we stated in *Draper City* that

> our case law has distinguished between use of a road by owners of adjoining property and by the general public. "Such property owners cannot be considered members of the public generally, as that term generally is used in dedication by user statutes." *Petersen,* 438 P.2d at 546. This is because adjoining owners may have documentary or prescriptive rights to use the road or their use may be by permission of the owners of the fee of the road.

888 P.2d at 1099; *see also Petersen v. Combe,* 20 Utah 2d 376, 438 P.2d 545, 547 (1968).

Having established the general legal principles of what it means to use a road as a public thoroughfare, we proceed to examine the evidence to determine whether this legal standard was satisfied. Several witnesses testified to use that could qualify as use as a public thoroughfare.[10] For example, Mr. Lloyd, while testifying about the shooting events at the gun club, stated: "We always had a lot of spectators [sic] would always drive out on the weekends and watch the shoots or family people and stuff that [sic] was interested in it. It was a lot of the community that came out there." As we noted above, other witnesses testified that numerous customers used the Airport Road to reach the various businesses located along that road. Moreover, there was testimony indicating additional public uses of the Airport Road as a "lover's lane" and also as a place to ride horses.

█ There is no indication in the district court's memorandum decision that it found any of the above evidence incredible. To the contrary, the district court specifically re-

ferred in its findings of fact to some of these public uses. Furthermore, when the court concluded its memorandum decision by "acknowledg[ing] that this is a close decision," the court stated, "There is evidence of public use of the airport roadway over an extended period of time." Indeed, no evidence to the contrary was presented. Moreover, Heber City never argued at trial or on this appeal that these uses were not by the "public." Because Heber City does not challenge the accuracy of the trial court's finding that "[t]here is evidence of public use of the airport roadway," we do not review whether all of these uses were indeed by individuals who qualify as members of the public. When a party fails to challenge a factual finding and marshal the evidence in support of that finding, we "assume[ ] that the record supports the findings of the trial court and proceed[ ] to a review of the accuracy of the lower court's conclusions of law and the application of that law in the case." *Saunders v. Sharp,* 806 P.2d 198, 199 (Utah 1991) (per curiam) (citing *Grayson Roper Ltd. Partnership v. Finlinson,* 782 P.2d 467, 470 (Utah 1989); *Scharf v. BMG Corp.,* 700 P.2d 1068, 1070 (Utah 1985)).

The evidence establishes that the public used the Airport Road for whatever purposes they deemed "convenient or necessary."[11] *See Boyer,* 326 P.2d at 109. On the basis of this evidence, we find as a matter of law that the public used the Airport Road as a public thoroughfare.

Having concluded that the first two elements under section 27–12–89 were satisfied, we turn to the final requirement in section 27–12–89: Continuous use as a public thoroughfare must occur for at least ten years. As we discussed above, the uncontroverted facts establish that the public continuously used the Airport Road as a public thorough-

---

10. Under the facts of the instant case, the public's use of the Airport Road simply to go to and from the airport is of the permissive nature that will not lead to a dedication and abandonment to the public, as this is precisely how Heber City wanted the road used. *See Gillmor v. Carter,* 15 Utah 2d 280, 391 P.2d 426, 428 (1964) (finding owners' "agreement with duck clubs granting permission to use" road across their land to be inconsistent with statutory requirements for dedication of public highway). Therefore, evidence

regarding this use of the road is irrelevant to our consideration of whether the Airport Road was used as a public thoroughfare.

11. The sole evidence to the contrary was that the gun club relocated after the airport became operational. For the same reasons we discussed above, *see supra* note 9, this fact alone is insufficient to justify the conclusion that the Airport Road was not used as a public thoroughfare.

fare from essentially its moment of creation in 1947 until Heber City placed a barricade across it in 1989. This amounts to over forty years of continuous use as a public thoroughfare, easily satisfying the ten-year requirement. We conclude therefore that the facts compel the conclusion that the ten-year requirement was satisfied as a matter of law.

Our conclusion that all three elements under section 27–12–89 for the establishment of a public highway were satisfied is supported by the district court's memorandum decision. After acknowledging in its memorandum decision that "[t]here is evidence of public use of the airport roadway over an extended period of time," the court added, "However, in the interest of fairness and justice, [the Airport Road] should be exempted from the *technical provisions* of U.C.A. § 27–12–89" (emphasis added). The plain language of section 27–12–89, however, does not support granting such an exception for the Airport Road. Once the technical provisions of that

section have been satisfied, the road is a "public highway." The court has no discretion to ignore that fact. We hold that the court erred in concluding that the Airport Road was not a public highway when closed by Heber City in 1989.[12]

We reverse the district court's decision that the Airport Road was not a public highway under section 27–12–89, and we remand for further proceedings to determine the just compensation to be paid by Heber City as a result of its condemnation of the Simpsons' property.

Justice HOWE, Justice DURHAM, Justice RUSSON, and Judge TAYLOR concur in Chief Justice ZIMMERMAN's opinion.

Having disqualified himself, Associate Chief Justice STEWART does not participate herein; District Judge STANTON M. TAYLOR sat.

---

**12.** The fact that the road has not been used since 1989 does not change its status as a public highway. In *Western Kane County Special Service District No. 1 v. Jackson Cattle Co.,* 744 P.2d 1376, 1377–78 (Utah 1987), we held that a highway which had been dedicated and abandoned to the public by the public's use of it "from 1919 until 1931, when the highway was relocated and public use of the ... road stopped," still maintained its status as a public highway though half a century had passed since the road was used by the public. *See also Clark v. Erekson,* 9 Utah 2d 212, 341 P.2d 424, 425–26 (1959) (requiring property owner to remove encroachments, which included buildings, fences, and trees, from public road though some encroachments had been in place for thirty years). Furthermore, the City's

placement of a barricade across the road does not change the public status of the road. *Memmott v. Anderson,* 642 P.2d 750, 753 (Utah 1982).

Section 27–12–90 of the Code provides the only method for eliminating the "public" status of a public highway. That section states, "All public highways once established shall continue to be highways until abandoned or vacated by order of the highway authorities having jurisdiction over any such highway, or by other competent authority." Utah Code Ann. § 27–12–90. The court found that Heber City had not formally abandoned or vacated the Airport Road under that section, and the City does not dispute this finding. Consequently, the Airport Road is still a public highway.

Appendix: Map of Airport Road

May 2, 1985, aerial photograph of Heber Airport and surrounding area. This photograph was altered to add street names and the boundaries of the Simpsons' property.